STATE OF MAINE

*vs.*

INTOXICATING LIQUORS AND VESSELS,

DOLAN & FURNIVAL Co., Claimant.

Cumberland.   Opinion June 5, 1919.

*Intoxicating Liquors.   Revised Statutes, Chap. 127, Sec. 21 interpreted.   Rule*
*to be applied in determining whether certain extracts or preparations*
*are intoxicating liquors within the meaning of the statute.*

Complaint and warrant and libel of certain extracts, liquors or compounds known as Jamaica ginger. The liquors libeled consist of a quantity of each of three different grades of Jamaica ginger, seized at claimant's extract manufacturing plant in Portland. The three grades are represented by State's Exhibit 1, which is claimed to be a medicinal preparation made in accordance with the formula prescribed by the United States Pharmacopeia, and containing 93 per cent. of alcohol, and State's Exhibits 2 and 3, claimed to be flavoring extracts, and containing respectively 28 and 55 per cent. of alcohol.

The question presented is whether any or all of the different grades of extracts represented by said exhibits are intoxicating liquors within the meaning of Revised Statutes, Chap. 127, Sec. 21.

*Held:*

1. The intent of the claimant that the Jamaica ginger should be used only as a medicine or for household purposes, and not as a beverage, does not control in this case.

2. If its composition is such that it is practicable to commonly and ordinarily drink it as a beverage and drink it in such quantities as to produce intoxication, then it is intoxicating liquor within the meaning of the statute. It is immaterial whether the plaintiff had any knowledge for what purpose the liquors were purchased if they were in fact intoxicating liquors and intended by the purchasers for illegal sale in this State.

3. It is the opinion of the court that the Jamaica ginger now held in this case is an intoxicating liquor within the meaning of Sec. 21, of Chap. 127, R. S., It therefore follows that any sale thereof is an unlawful sale, and any possession for the purpose of sale is an unlawful possession under R. S., Chap. 127, Secs. 27 and 28.

Complaint and warrant under which certain quantities of Jamaica ginger, so called, were seized. The liquors were libeled according to statute, and after hearing, the case was reported, by agreement, to the Law Court. Judgment for the State.

Case stated in opinion.

*Carroll L. Beedy, and Clement F. Robinson,* for the State.

*William C. Eaton, and W. A. Connellan,* for the respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

HANSON, J. This case is before the court on report upon the libel, monition and claim filed, the records of proceedings in the Municipal Court on said libel, monition, and claim, and the testimony taken in the Superior Court for Cumberland County at the January and May Terms, 1918, in two cases involving the same subject matter. The Law Court is to make a final determination whether the claimant is entitled to said liquors and vessels or whether they should be forfeited to the State.

There were certain stipulations accompanying the report, which in view of the agreement of counsel that but one question is before us, will need no further reference.

The liquors libeled consist of a quantity of each of three different grades of Jamaica ginger, seized at claimant's extract manufacturing plant in Portland. The three grades are represented by State's Exhibit 1, which is claimed to be a medicinal preparation, made in accordance with the formula prescribed by the United States Pharmacopeia, and containing 93 per cent. of alcohol, and State's Exhibits 2 and 3, claimed to be flavoring extracts, and containing respectively 28 and 55 per cent of alcohol.

The question presented is whether any or all of the different grades of extracts represented by said exhibits are intioxicating liquors within the meaning of R. S., Chap. 127, Sec. 21. That Section reads as follows;

"No person shall at any time, by himself, his clerk, servant or agent, directly or indirectly, sell any intoxicating liquors, of whatever origin; wine, ale, porter, strong beer, lager beer, and all other malt liquors, and cider when kept or deposited with intent to sell the same for tippling purposes, or as a beverage, as well as all dis-

tilled spirits, are declared intoxicating within the meaning of this chapter; but this enumeration shall not prevent any other pure or mixed liquors from being considered intoxicating."

The claimant's counsel urges the application of the doctrine that a liquid primarily useful and intended for a legitimate use, does not come within the meaning of the term "intoxicating liquor", unless sold to be used as a beverage, even though it may contain a large percentage of alcohol. Counsel cities at length *State* v. *Costa*, 78 Vermont, 195; *King* v. *State*, 58 Miss., 739; In *Intoxicating Liquor Cases*, 25 Kansas, 751; *Russell* v. *Sloan*, 33 Vermont, 659; *U. S.* v. *Wilson*, 69 Fed., 144, *Mason* v. *State*, 1 Ga. App., 535; *Holcome* v. *People*, 49 Ill. App., 73, as sustaining his contention, the last cited only referring specifically to the sale of ginger in any form, and this the essence of ginger.

In *State* v. *Costa*, supra, the court say, in a case involving extracts, tinctures, essences, etc.: "In respect to such articles the inquiry is not simply whether they contain more than one per cent of alcohol, but that there is the further inquiry, whether or not the articles are sold to be used as a beverage. In respect to the sale of *such preparations the intent governs*. If there is no intent to sell these preparations for other than legitimate uses there is no offense. If, however, the preparation is capable of being used as a beverage and is sold or kept for sale with the purpose, intent or understanding that it is to be used as a beverage, then if it contains more than one per cent of alcohol, an offense is committed." Here it will be seen the intent governs. To the same effect are all the other cases cited and the court in each instance emphasized its conclusions by defining the difference between a druggist having for sale liquors or mixtures for medicinal, culinary or toilet purposes, and a law breaker who, under the guise of an honest, harmless salesman, deals out intoxicating liquors of all descriptions to all would be purchasers who will protect him by their silence, or perjure themselves if he is tried for his offenses. Each court in the order of the citations has put the stamp of condemnation upon the latter class, has drawn the line between the practice of reputable physicians, and the prescriptions they write, and the medicine they regularly use, and the numerous storekeepers, and others, who sell without prescription any liquor, alcoholic or otherwise, upon request of any person. But in *State of Vermont* v. *Eddio Barr*, 84 Vermont, 38, 77 Atlantic, 914, L. R. A., 48 N. S.,

302, a case very much later than any Vermont case cited by the claimant's attorney, the court say: "The words 'intoxicating liquor' as used in our statute, include spirituous or intoxicating liquor, malt liquors, lager beer, fermented wine, fermented cider, and distilled spirits, and any beverage which contained more than 1 per cent of alcohol by volume at 60 degrees Fahrenheit. Vt. Pub. Stat. 5101." It will be observed that in all the earlier cases cited, the courts were not dealing with Jamaica ginger as known and unlawfully used in this jurisdiction.

But the intent of the claimant that the Jamaica ginger should be used only as a medicine or for household purposes, and not as a beverage, does not control in this case. It is conceded that the Jamaica ginger was in claimant's possession, that claimant owned it, and that it was taken by an officer of the law. Claimant's business was that of making and selling Jamaica ginger, and this lot was there for sale. 'Was the Jamaica ginger intoxicating liquor within the meaning of the statute' The Statute is directed in the first instance against the sale of all intoxicating liquor of whatever origin. It then enumerates the malt liquors, cider when kept or deposited with intent to sell for tippling purposes or as a beverage, as well as all distilled spirits, and finally includes within its scope and meaning any and all kinds of liqour capable of producing intoxication, the section concluding—"but this enumeration shall not prevent any other pure or mixed liquors from being considered intoxicating."

Without the aid of the Statute, we would find no difficulty in holding that the Jamaica ginger involved in this case is and was at the date of seizure intoxicating liquor. With the Statute before us we must add our conviction that Jamaica ginger is included in its terms, and was intended to be included by the legislature, and with it all similar compounds capable of being used for tippling purposes, or as a beverage, having alcohol as a constituent, and capable of producing intoxication. There can be no other reasonable, defendable conclusion. It is a matter of common knowledge in which all courts share, a knowledge antedating recent legislation or agitation, that for years Jamaica ginger, whatever its merits may be, has been used as a substitute for other intoxicants. This knowledge in the last few years has increased, and in recent terms of our own court has come home to us in repeated instances where Jamaica ginger is used as a base, and, mixed with the so called, and almost equally

harmful, "near beers," produces cases of intoxication with which courts have to deal, together with unnumbered cases known only to the immediate friends of the unfortunate tippler. In *Heintz* v. *Lepage*, 100 Maine, 542, an action to recover the price of intoxicating liquor sold, it was held "that any liquor containing alcohol, which is based on such other ingredients or by reason of the absence of certain ingredients that it may be drunk by an ordinary person as a beverage and in such quantities as to produce intoxication, is intoxicating liquor. If its composition is such that it is practicable to commonly and ordinarily drink it as a beverage and drink it in such quantities as to produce intoxication, then it is intoxicating liquor within the meaning of the statute. . . . It is immaterial whether the plaintiff had any knowledge for what purpose the liquors were purchased if they were in fact intoxicating liquors and intended by the purchasers for illegal sale in this state."

The testimony in the case is ample to bring it within the purview and scope of *Heintz* v. *Lepage*, supra. The evidence shows that the Jamaica ginger could be and was used by ordinary persons as a beverage and in such quantities as to produce intoxication and did in fact produce intoxication. See *State* v. *Frederickson*, 101 Maine, 37.

In *Mitchell* v. *Com.*, 106 Ky., 602, the defendant was charged with selling Jamaica ginger, and there was evidence that it contained about 96 per cent. of alcohol. The court said: "Moreover, we think that without the druggist's evidence it is a matter of common knowledge that Jamaica ginger is an intoxicant and a spirituous liquor, and it is hardly more necessary to introduce testimony of that fact than it would be of whiskey. 15 R. C. L., 377; *State* v. *Miller*, 92 Kansas, 994 (1917)."

It is the opinion of the court that the Jamaica ginger now held in this case is an intoxicating liquor within the meaning of Sec. 21 of Chap. 127, R. S. It therefore follows that any sale thereof is an unlawful sale, and any possession for the purpose of sale is an unlawful possession. R. S., Chap. 127, Secs. 27 and 28. The mandate will be,

> *Judgment for the State.*
> *The liquors and vessels are declared*
> *forfeited to the State.*