### Ex Parte Oscar Olson.

#### No. 3812. Decided June 24, 1922.

#### (243 S. W., 773.)

1.—Habeas Corpus—Commitment for Contempt.

The writ of *habeas corpus* cannot be used as a method of appeal or for the correction of errors of the trial court by which relator was committed to custody. The sole inquiry is as to the court's jurisdiction to make the order. Ex Parte Smith, 110 Texas, 55; Ex Parte Lipscomb, 111 Texas, 409, followed. (P. 610).

2.—Same—Sufficiency of Evidence.

The evidence on which relator was imprisoned for contempt in violating an injunction against the sale of intoxicating liquors is here reviewed, not for the purpose of determining its sufficiency to establish such violation, but for ascertaining that same presented a question of fact, on which the

conclusions of the trial court, if acting within its jurisdiction, were binding on the Supreme Court in this proceeding.    (Pp. 611, 612).

### 3.—Temporary Injunction—Restraining Order.

A temporary injunction, which the order here considered is held to be, continues in effect, even on appeal, until modified by the court; and it is distinguished from a mere restraining order effective by its terms for only a limited time.    Ex Parte Zucarro, 106 Texas, 197, 163 S. W., 579, dis- (Pp. 610, 611).

### 4.—Same.

. Where the preliminary injunction restrained the relator from certain acts until further order of the court at its regular term to be held at a named time and place the injunction did not cease to be effective at the meeting of such term of court.    (Pp. 610, 611).

### 5.—Injunction—Intoxicating Liquor—Sale as Beverage.

The *fiat* of the judge and injunction issued in pursuance thereof, here considered, did not restrain the relator from selling intoxicants for purposes other than their use as a beverage.    But if they had been too broad in their terms this did not render the injunction void nor deprive the court of jurisdiction to punish its disregard as a contempt.    Ex Parte Testard, 101 Texas, 250; Lytle v. Galveston, H. & S. A. Ry. Co., 41 Texas Civ. App., 112, 90 S. W., 316, followed.    (P. 611).

### 6.—Habeas Corpus—Contempt—Sufficiency of Evidence.

Whether the liquors sold were in fact intoxicating, and whether they were sold by respondent for use as a beverage, were questions of fact to be determined by the trial court on proceedings before it to punish for contempt of its injunction, and they cannot be reviewed by the Supreme Court on *habeas corpus*.    (Pp. 611, 612).

Original application to the Supreme Court for writ of habeas corpus by Olson, who had been imprisoned for contempt in violating an injunction by the District Court of Stephens County against his selling intoxicants.

*Miller & Haworth*, for relator.

A temporary injunction made returnable on a specific date, and which is not continued in effect by an affirmative order of the court, either as a continuing temporary injunction, or as a permanent injunction, on the date of its return, expires by the limitation of its own terms.    Ex Parte Zucarro, 106 Texas, 197, 163 S. W. 579.    Relators respectfully assert that the court was without jurisdiction to issue a blanket injunction against the sale of Jamaica ginger, or tincture of ginger, by relators or any one else, for the reason that said tincture of ginger, or Jamaica ginger, as it appears from the statement of facts on file herein, and from the United States Pharmacopoeia, of which this Court will take judicial knowledge, is a common medicinal extract, containing ginger root and a large percentage of alcohol, but which is commonly and extensively used as a medicinal preparation; is freely sold by the United States Government and by others; that it is sanctioned as such, and has been generally sold as a medicine by druggists.    Relators were adjudged in contempt for the making of

one sale by Rock Weaver of four ounces of said tincture of ginger, which were not in fact bought or sold as a beverage, and were never in fact used as such, and were sold, so far as the record discloses, for no improper purpose. Bertrand v. State, 18 So., 545.

*W. A. Keeling,* Attorney-General, *S. J. Osborne,* District Attorney, and *L. C. Sutton,* Assistant Attorney-General, for respondents.

The District Court had jurisdiction to punish relators for contempt. The Dean Law, Ch. 6A, Vernon's Penal Code, 1922 Supp., secs. 38, 39; Vernon's Complete Statutes of 1920, secs. 1, 2, 2a, 2b, 5. Since the district court had jurisdiction to punish relators for contempt the writ of habeas corpus will not lie. 15 Am. & Eng. Enc. of Law, 177; 21 Cyc., 295; 12 R. C. L., 1210, 1244; Jordan v. State, 14 Texas, 436; Exp. Warfield, 40 Tex. Cr., 413, 76 Am. St., 724, 50 S. W., 933; Exp. Latham, 82 S. W., 1046; Exp. Duncan, 42 Tex. Cr., 661, 62 S. W., 758; Exp. Degener, 30 Tex. Cr., 566, 574, 17 S. W., 1111; Darrah v. Westerlage, 44 Texas, 388.

It has been frequently held by the Supreme Court and Court of Criminal Appeals that the writ of habeas corpus can only be granted in extraordinary cases, where the remedy at law is not adequate. Ex Parte Lipscomb, 239 S. W., 1101; Ex Parte Windsor, 78 S. W., 510; Ex Parte Ezell, 40 Texas, 451; Ex Parte Dickerson, 30 Tex. Cr. App., 448, 17 S. W., 1076; Ex. Parte Lambert, 37 Tex. Cr. App., 435, 36 S. W., 81; Ex Parte Japan, 36 Tex. Cr. App., 482, 38 S. W., 43; Ex Parte DeLoche, 50 Tex. Cr. 525, 100 S. W., 923.

The writ of habeas corpus will not serve as a means of appeal, writ of error or certiorari. Ex Parte Lipscomb, 111 Texas, 409.

The temporary injunction was violated by relator Oscar Olson, the the employer, or proprietor, and hence the District Court had jurisdiction to punish him for the contempt. Lytle v. G., H. & S. A. Ry. Co. 41 Texas Civ. App., 112; 16 A. & E. Ency. of Law, p. 436; 22 Cyc., page 1013; 14 R. C. L., page 325; Ex Parte Testard, 102 Texas, 287, 115 S. W., 1155; Lytle v. G., H. & S. A. Ry. Co., 90 S. W., 316, 41 Tex. Civ. App. 112; Ex Parte Stone (Cr. App.) 72 S. W., 1000.

The contempt was for violation of a temporary or interlocutory order, which must be obeyed, and cannot be ignored, pending hearing on the merits; and this regardless of the final outcome of the case. Ex Parte Roper, 134 S. W., 334; Ex Parte Warfield, 50 S. W., 933.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

A writ of habeas corpus was issued in this proceeding on the application of relator, Oscar Olson, complaining that he was restrained of his liberty by the sheriff of Stephens County under an order and commitment of the 90th District Court of that county, issued on the 2nd day of June, 1922. The case was heard in this Court on June 14, 1922, on the application, answer, and agreed record. The relator

was committed for contempt for an alleged violation of an injunction issued by the said District Court. We will now state the facts leading up to the relator's imprisonment.

On the 16th of February, 1922, the Honorable S. J. Osborne, District Attorney of Stephens County, Texas, prepared and presented to the Honorable C. O. Hamlin, Judge of the 90th Judicial District, a sworn petition for a temporary injunction against the relator, the substance of which is, briefly, as follows: The petition is in the name of the State of Texas, through its District Attorney, and alleges that the relator, Oscar Olson, resides in the city of Breckenridge, Stephens County, and pretends to operate a drugstore in that city, but that in truth and in fact he was engaged in the business of an unlawful intoxicating liquor seller, and used the name of drugstore as cover for his unlawful and illegal business of selling intoxicating liquor in violation of the laws of the State. The petition further stated that relator would continue to engage in the business of selling spirituous, vinous, and malt liquors and medicated bitters, in violation of law unless restrained by the court. It was alleged that relator sold Jamaica ginger, an intoxicant containing more than two percent. alcohol, for beverage purposes, and would continue to do so, unless restrained. The petition further declared that relator was in the business of selling, and sold to the public, a drink called "Jake", which is an intoxicant containing more than one per cent. alcohol; that he had made many sales of this drink to divers persons in open defiance of the laws of the state, and would continue so to do, unless restrained by the court. The petition likewise declared that the relator had a house in the city of Breckenridge, in Stephens County, in which he conducted the unlawful business alleged; that said business was a public nuisance, and that he had in the house counters, glasses, bottles, jugs and paraphernalia used in the unlawful business. It was declared that relator would continue this unlawful business unless restrained by the court, and that it was necessary for a temporary injunction to issue at once. The State asked, among other things, that relator's house be closed, as required by law, and the property used by him in the conduct of the unlawful business alleged, including the liquors found be ordered destroyed by the court. The State prayed also "that the court issue a *temporary injunction* restraining the defendant from selling any intoxicating liquors whatsoever, including the sale of Jamaica ginger, of the drink called 'Jake', or intoxicating liquor mixed with any other drink, and that on hearing hereof said injunction be made permanent; and for such other relief, in law or in equity, as the State may be entitled to together with judgment for costs." The petition was properly sworn to by the District Attorney. It was presented to the District Judge on the date above stated, who endorsed thereon his fiat, as follows: "The foregoing petition examined by me, this the 16th day of Febru-

ary, 1922, and *temporary injunction as prayed for granted*, and the clerk of this court will issue writ restraining the defendant, Oscar Olson, from selling intoxicating liquors of any kind, or selling Jamaica ginger or the drink called 'Jake', or Jamaica ginger mixed with any other substance or liquid.'' The injunction was clearly authorized by the statute. Arts. 4649, 4650, Vernon's Complete Statutes 1920; Arts. 588¼a 1, 588¼b, 588¼c, 588¼rr, Vernon's Texas Statutes, Supp. 1922. This petition, with the fiat of Judge Hamlin, was filed in the District Court on the 16th of February, 1922. On the same day that this petition was filed, the clerk issued a citation in the usual form, addressed to the relator, Oscar Olson. The substance of the petition was set up in the citation, including the prayer for temporary injunction. The citation was served on relator on the day of issuance. On the same day the clerk issued a temporary injunction addressed to relator, Oscar Olson, which contained the substance of the petition and a copy of the Judge's fiat heretofore quoted in the opinion. The temporary injunction was served on the relator on the day it was issued This was all in compliance with the statute. Arts. 4652, 4653, 4655, 4656, 4658, 4659, Vernon's Complete Texas Statutes. On March 18, 1922, relator made his appearance in response to the petition filed against him, by filing an answer in the cause as permitted by Art. 4663 Vernon's Complete Texas Statutes; but since the case has not heretofore been tried on the petition, and this proceeding in no way relates to the actual final determination of the controversy, it is unnecessary to state the substance of the answer. On May 30, 1922, the District Attorney prepared and presented to the District Judge an affidavit, directing attention to the filing of the petition above described, the granting of the temporary injunction, the issuance of the writ, service of citation on the relator, and the filing of his answer in the cause. The affidavit then alleged that, on or about the 20th day of May, 1922, relator, in open defiance of the temporary writ of injunction ''which he well knew, and one Rock Weaver, an employee of said Oscar Olson, acting together, sold to E. J. Kiker spiritous and intoxicating liquors and the drink called 'Jake', and Jamaica ginger, in violation of your honor's writ of injunction, which was in full force and effect and not vacated. . . . That in addition to said sale as aforesaid, the said Oscar Olson and the said Rock Weaver have never desisted from selling any of the liquors prohibited by Your Honor's writ, but that each of them have, in open defiance of Your Honor's writ, openly defied your Honor's authority, and your writ of injunction, and have sold to divers persons, whose names are unknown to me, intoxicating liquors, 'Jake', and Jamaica ginger; and that said sale to said Kiker, and to the divers other persons whose names are unknown to me was not for medical purposes, but for beverage, purposes, and in plain violation of the prohibition laws of Texas''. Prayer was made in the

affidavit for a warrant of arrest, and that relator be brought before the court and punished for contempt, as provided by law. This affidavit was presented to Judge Hamlin, who directed the clerk of the court to issue an order citing relator to appear before him in the district court room of Stephens County on June 1, 1922, at nine o'clock a. m. to show cause, if any, why he should not be adjudged in contempt of court, and at which hearing full inquiry would be made as to whether he should be punished by the court for violation of the writ of injunction issued by the court. Citation in proper form issued to relator by the Clerk of the Court, commanding him to appear at the time and place named by the District Judge, to show cause why he should not be punished as for contempt. The substance of previous proceedings and of the affidavit referred to was embraced in the citation to show cause, which was served on relator on May 30, 1922. This was all plainly authorized by the statutes, and the general rules of equity. Arts. 4669, 4671, Vernon's Complete Texas Statutes; 9 Cyc. p. 39; Ex parte Ireland, 38 Texas, 351.

The trial of the contempt case came on to be heard, however, before Judge Hamlin on June 2, 1922, who proceeded to hear proof, as provided by Art. 4670, Vernon's Complete Texas Statutes. The relator appeared at the trial, but filed no answer, and did not testify. His counsel, however, took an active part in the trial, cross-examining the State's witnesses and placing on the witness stand witnesses for relator.

Upon this hearing, the Court found relator guilty of contempt and punished him therefor by fine of five hundred dollars, and, in addition, by confinement in the county jail for one hundred and twenty days, under Art. 588¼s, Vernon's Statutes, Supp. 1922. Upon this judgment commitment issued, and relator applied to this Court for relief by habeas corpus. Arts. 4670, 1529, Vernon's Complete Texas Statutes.

It is unnecessary for us to state the evidence in detail, in view of the law which governs us in the consideration of a case of this character, but for the purpose of showing that relator was given such a trial as is contemplated by the constitutional guaranty of due process, we will advert to some of the testimony.

E. J. Kiker, who was on the grand jury of Stephens County in May of this year, testified that on the fourth of May he went to relator's place of business and purchased from relator's clerk there four bottles of Jamaica ginger, which were identified, and introduced in evidence in this case. He stated that he bought the ginger from a man who was working behind the soda-fountain, whose name the record discloses was Rock Weaver, the relator in another case pending in this Court. Mr. Kiker paid $2 for the four ounces of Jamaica ginger. The witness said in part: "I

went into the store and asked him (the clerk) if he had any 'Jake', and he said yes, he could fix me a drink, and started to mix it with a coca cola, or in a coca cola glass, and I told him I did not want to drink it there, I wanted to take it with me. Then he asked me how much I wanted, and I told him four ounces.''

It appears that Weaver hesitated about selling the witness that much, but that relator who was in the store and near, nodded his head to Weaver, after which Weaver let the witness have the Jamaica ginger as above shown.

The witness testified that the inside of the store looked like a stock of drugs, and the ''Jake'' was in a box; that Weaver got the ''Jake'' either under the counter of the soda-fountain or from under the place where there is a mirror and the place to put drinks; that there must have been about 25 bottles where the clerk obtained the four bottles which the witness bought  The witness continued:

''When I asked him for this stuff, he got a glass, and I stopped him and said I did not want to drink it there.  When I asked him if he had some 'Jake', he said 'sure', and got the glass, and then I said I did not want to drink it there.''

The witness identified Rock Weaver, who was present in the court room, as the man who sold him the ''Jake'', and relator, Olson, as the man who nodded to him when Weaver hesitated.  This witness testified that at the time he bought this ''Jake'' there were two or three men in the store apparently drunk.  The witness stated that when he bought the ''Jake'' he did not give any excuse for buying it, or anything of the sort, that Weaver did not ask him what he wanted it for, and he did not say.  The witness took the bottles of ''Jake'' and turned them over to the District Attorney.

J. C. Flournoy, who was a member of the grand jury with Mr. Kiker, went with the latter to relator's place of business when the ''Jake'' was purchased.  His testimony is similar to that of Mr. Kiker.  He stated that Mr. Kiker had no trouble in buying the ''Jake''; that there seemed to be a ''pretty plentiful'' supply on hand under the counter of the soda-fountain when the purchase was made.  He stated that he had drunk ''Jake'', and had examined and tasted the contents of the four bottles purchased, which were introduced in evidence; that they contained ''Jake'', and that ''Jake'' was an intoxicating liquor.  He stated: ''The substance in these bottles is commonly called 'Jake' here around Breckenridge.''

R. T. Callison testified that he was on the police field force in the city of Breckenridge something over ten months, and had worked extra some few times since he left the force; that he was acquainted with relator Olson and Rock Weaver; that he knew something about the drink called ''Jake''; that he had found men drunk in Olson's place of business, though he did not know how many; that he had seen one sale

of "Jake" there by a man named Oats, who was waiting on the trade. The drink was mixed in glasses, and the purchasers started to drink it at the counter, when the witness seized one of the glasses, which he took to police headquarters, and the drink which it contained looked and smelled like "Jake". That he had seen Oats around this place of business a number of times since the 16th of February of this year. He stated that at the time he seized this drink there was one drunken man in the store sitting on an Anheuser Busch beer case, which had contained near-beer. The man was drunk and could not talk; that at the time he saw this sale by Oats, neither Mr. Weaver nor Mr. Olson was in the store. This occurred since the issuance of the injunction, as is shown by the testimony of the witness Roy David.

R. E. Hickey, a member of the police force of Breckenridge, testified that he knew relator Olson and Rock Weaver; that he did not know whether relator kept a pharmacist; that the reputation of Olson's place of business was that "it is known as a 'Jake' joint". He stated that a "Jake joint" was a place where they serve Jamaica ginger, which he said had a highly intoxicating effect. The witness stated that he had noticed drunkenness and disorder about relator Olson's place of business; that he had seen "Jake" served from the soda-fountain; had seen men there in a high state of intoxication, and had locked up quite a number of them as they came out of that place and put them in jail for drunkenness. He stated that he hardly knew how to estimate the number of drunken men he had seen around relator Olson's place of business, but that he had seen five or six around there regularly during the last year; that he had seen drunken men in and around relator's place of business a number of times since the 16th of February of this year, the date of the issuance and service of the injunction for the violation of which relator was committed to jail. He stated that he had been in there and about there when parties had bought "Jake", which was the usual name by which Jamaica ginger was known in and around Breckenridge, which he stated was intoxicating and seems to have about the same effect as whiskey. He stated that the men he had seen intoxicated around relator's place of business had been drinking "Jake"; that he had seen them drinking "Jake". This witness stated that relator Olson had been arrested for selling "Jake" a number of times; that he thought that relator had been arrested a time or two since the injunction went into effect in February—some two or three times according to his recollection.

Roy David testified for the State that he was on the police force at Breckenridge, knew relator Olson and Rock Weaver; that he knew their place of business in Breckenridge, and had occasion to observe it; that he had been in and about it and watched it; that he had seen drunken men around there; that he had caught "Jake" being sold

there with mixed-up drinks; that he was with Mr. Callison when they took the "Jake" from customers who were about to drink it in the place; that he had been on the police force about a month and a half, and his experience with Mr. Olson's place was during that period of time; that he had arrested Mr. Oats and Mr. Weaver for selling the "Jake" and that at the time men were in the place drunk. He made the arrest in Olson's place of business. That although he had never arrested relator Olson, he had seen him sell "Jake".

George Liles testified that he was deputy sheriff, and knew relator Olson, but did not know Weaver except by sight; that he had known Olson's place of business about a year; that since the 16th of February, he had been along in front of Olson's place and was in there one time; that he had seen men drunk in and around the place; that about a week or two before the contempt proceedings two drunken men were having trouble on the front gallery, and the witness arrested them on the sidewalk. The witness, among other things testified: "You ask if I know the reputation of the place Olson runs. Well, he calls it a 'Jake joint' or 'Jake alley'. There has been considerable complaint about running this 'Jake joint' and selling 'Jake' there. I have seen people around there in an intoxicated condition every once in a while."

It is unnecessary to abstract the balance of the testimony. We have given a sufficient statement to show that the question as to the character of relator's business and whether or not the sale of "Jake" therein was for beverage purposes, were questions of fact for the court.

On the issue of the intoxicating qualities of "Jake" or Jamaica ginger, the evidence not only raises the issue as a question of fact to be determined by the trial judge, but if we were permitted to pass upon the question, we would say it is conclusive of the issue. In fact, the evidence is substantially, without any contradiction, not only that "Jake" or Jamaica ginger is an intoxicating drink, but that relator was actively and substantially engaged in its sale for beverage purposes, both before and after the issuance of the injunction against him. The evidence is sufficient, too, even on controverted issue, to sustain the conclusion that the "Jake" sold by relator, or at his place of business, had been filtered, the ginger largely taken thereform, and the remainder made into a more palatable drink. But these questions of the sufficiency of the evidence are immaterial to the present inquiry. We have referred to them purely for the purpose of showing that the case was one which presented issues for the determination of the trial court, and that the court did not act without giving relator a full hearing on the facts. These recitations of the evidence have not been made for the purpose of passing upon the existence of any fact, or the sufficiency of the evidence to support the conclusions of the trial court, but rather to make plain the issues before us, and

show that the court below gave relator such a trial as the due process clause of the Constitution contemplates.

The rule is elementary that the writ of habeas corpus cannot be used as a method of appeal for the correction of errors of the trial court; and in this proceeding we are not sitting in the exercise of our powers of review, but for the purpose of determining whether or not in fact relator has been accorded due process of law. Ex parte Lipscomb, 111 Texas, 409, 239 S. W., 1101, 1103.

It is definitely settled that, on habeas corpus proceeding, our inquiry will be limited to the question of jurisdiction. Ex parte O. M. Smith, 110 Texas, 55, 58; Ex parte Lipscomb, supra, page 409, and authorities cited.

In this case, therefore, our inquiry must be limited to the question as to whether or not the trial court had jurisdiction of the questions at issue, the determination of which resulted in the judgment finding relator guilty of contempt of the court, and punishing him therefor.

The first insistence made by relator is that the temporary injunction issued by the court in the original proceeding of the State of Texas v. Oscar Olson, which forms the basis of the contempt proceeding, was not a temporary injunction, but merely a restraining order, contending that the case comes within the doctrine of Ex parte Zucarro, 106 Texas, 197, 163 S. W., 579. There is no merit in this contention. An examination of the petition of the State shows that the prayer was for a temporary injunction, and, finally, that the temporary injunction be made permanent. The fiat of the Judge endorsed on the petition expressly states that a "temporary injunction as prayed for", was granted, and the writ of injunction itself recites the substance of the petition, including the *prayer for temporary injunction* and the fiat of the Judge granting the *temporary injunction.* The relator takes the position that because the inhibitory command contained in the temporary injunction enjoined relator until the further order of the 90th District Court, "to be holden within the County of Stephens at the court house thereof in Breckenridge on the first Monday in March, A. D. 1922, the same being the 6th day of March, A. D. 1922, when and where this writ is returnable", made the injunction merely a restraining order, and that when it was not expressly continued on the return day, it expired. The court did not set the petition down for hearing on the application for temporary injunction, and grant a restraining order until the date of such hearing, as he could under Article 4651, Revised Statutes. On the contrary, he granted a temporary injunction outright, as is plainly evidenced by the language of his fiat endorsed on the petition, as well as by the writ of injunction itself. The return date named in the writ of injunction issued by the clerk was merely the specification of the term of court, as required by Subdivision 5, of Article 4656, setting up the requisites of writs of injunction. The order was clearly

a temporary injunction, and continued in effect, although no trial of the case has yet been had, and will so continue, even on appeal, unless modified by the court. Revised Statutes, Article 4654; Ex parte Roper, 61 Texas Crim., 68, 134 S. W., 334, 338; 22 Cyc, 982.

In the Zucarro case, the order was clearly a restraining order, and setting the date for a hearing on the application for temporary injunction, as is contemplated may be done under Article 4651.

It is insisted that the fiat of the Judge and the temporary injunction issued thereunder are too broad, on the theory that they enjoin the sale of Jamaica ginger, without specifying that the injunction is against the sale of this article as a beverage. The fiat of the Judge and the writ of injunction, construed in the light of the petition, are not subject to this objection. They clearly relate to and enjoin the sale of Jamaica ginger, or "Jake", as a beverage. However, if the injunction was in fact too broad, it would not make the order void; and, unless absolutely void, relator, in this proceeding, could not question it. Ex parte Testard, 101 Texas, 250, 253; High on Injunctions, Vol. 2 (4th Ed.) Secs. 1416, 1417.

The District Court clearly had jurisdiction of relator and the subject matter of the suit, and the injunction issued, therefore, cannot be said to be absolutely void. Lytle v. G., H. & S. A. Ry. Co., 41 Texas Civ. App., 112, 90 S. W., 316, 317, and other authorities cited above.

It is next insisted that relator was adjudged in contempt because of the sale by Rock Weaver of four ounces of "Jake", which it is claimed, was not in fact bought or sold as a beverage, and was never used as such. We cannot agree to this conclusion. The trial judge, whose conclusion is final on this question, found not only that the sale was made to Kiker, but that relator and Weaver had made many and numerous sales of the drink called "Jake" in violation of the temporary injunction served on relator, which, as we have seen, restrained him only from selling this drink as a beverage.

As shown above, it is not our province to review the findings of the trial court on habeas corpus proceedings. The sufficiency of the evidence was a question of fact for the trial court, and his conclusion is final. It is not our purpose to review the evidence as to its sufficiency to support the findings of the trial court. As was said in the case of Ex parte Lytle, 99 Texas, 405, 89 S. W., 956, in an opinion by Justice Williams of this Court, "It must be understood that this Court is not clothed with appellate power over such judgments, and its has neither the right nor the disposition to assume a jurisdiction of that character." This case is not one where there is a total lack of evidence to show the commission of any offense over which the trial court had jurisdiction, and it is unnecessary for us to pass upon that character of case, nor do we do so.

As to whether or not Jamaica ginger, or "Jake", or whatever the decoction was which was sold at relator's place of business, was an

intoxicating liquor within the terms of our statute, and as to whether or not it was sold as a beverage, were all questions of fact for the trial court to pass upon. State v. Johnson, 101 S. E., 851; Hobbs v. Pawhuska, 187 Pac., 258; State v. Higgins, 182 N. W., 887; State v. Intoxicating Liquors, 106 Atl., 711; State v. Hastings, 81 Atl., 403; State v. Andrews, 176 N. W., 637; McMillan v. Metcalfe, 174 N. W., 481; State v. Klein, 174 N. W., 481. The trial court did pass upon them, and resolved them against the relator. It is not within our province to review this decision.

The record shows that in all respects due process has been accorded relator. He was tried before a tribunal properly erected, having jurisdiction of his person and the subject matter of the complaint against him; he was given notice as required by law; and, after an opportunity to be heard, the trial court found him guilty of contempt.

Having concluded the trial court had jurisdiction, and exercised that jurisdiction under due process of law, it follows that relator must be remanded to the custody of the Sheriff of Stephens County, and is is so ordered.