**TERRELL et al. v. ALPHA PETROLEUM CO.***

No. 2404.

Court of Civil Appeals of Texas. Beaumont.
Nov. 16, 1932.

Rehearing Denied Nov. 19, 1932.

Jas. V. Allred and Maurice Cheek, both of Austin, for appellants.

Wm. F. Grimes, John T. Garrison, John C. Jackson, Paul D. Page, Jr., and Lawrence Lipper, all of Houston, and Wm. N. Bonner, of Wichita Falls, for appellee.

LAWHON, J.

Alpha Petroleum Company, a Texas corporation, filed this suit in the district court of Montgomery county against C. V. Terrell, Lon A. Smith, and Ernest O. Thompson in their capacity as railroad commissioners of the state of Texas, and also against W. B. Browder, Howard Van Zandt, the Texas Pipeline Company, a corporation, and Beta Oil Company, a corporation. W. B. Browder is alleged to be the county attorney of Montgomery county and Howard Van Zandt is alleged to be deputy supervisor of the Conroe oil field, acting under the appointment of and at the direction of the Railroad Commission of the state of Texas. It is alleged in plaintiff's petition that it is the owner of oil and gas leases on two tracts of land in Montgomery county near the town of Conroe, and that it has valuable producing oil wells on this land. It is also alleged that one of the wells is producing 1,750 barrels per day, but is capable of producing in excess of 6,000 barrels daily if the valves and controls should be opened so that it would flow to full capacity, and that the other well is producing 3,200 barrels per day, but is capable of producing 12,000 barrels daily. It is alleged that the wells were drilled in a proper and workmanlike manner, and were being operated without physical or other character of waste; that it has a market for its oil, so that there will be no evaporation by reason of storage; that one well was drilled at an approximate cost of $42,000, and was completed about July 28, 1932, and the other well was drilled at an approximate cost of $38,000, and was completed about September 1, 1932. It is alleged that the Conroe oil field, where the two wells mentioned are located, is in what is known as the "coastal area," extending from Refugio county, Tex., through a number of counties in Texas near the Gulf of Mexico, and through a number of coastal parishes in the state of Louisiana; that the Railroad Commission had heretofore issued proration orders limiting the production of oil in all the fields of Texas except those located in the "coastal area." It is alleged that, by reason of the difference in the depths of the wells and the nature of the pools or reservoirs of oil and geological formations, the production of oil from wells outside the "coastal area" can be curtailed without permanent injury to such wells or formations, while in the "coastal area" such limitation of flow is liable to cause serious injury or destruction of such

wells and geological formations; that appellee had by gradual processes reduced the flow of its wells far below full capacity in order to conform to the general plan of proration, but that the method it used would not work any permanent injury to such wells; that the Railroad Commission, on September 19, 1932, promulgated an order amending a previous order, whereby production in the Montgomery county or Conroe oil field was limited to 240 barrels per day, such order to become effective September 24, 1932, and in such order Montgomery county was excluded from the "gulf coast area," although other counties included in such area were many miles further removed from the Gulf of Mexico than Montgomery county; that in other fields near the Gulf Coast the owners were given wide discretion as to whether the reduction in the flow of oil would injure such wells, but that no such discretion was given owners or operators in the Montgomery county or Conroe field, and that the enforcement of such order would probably injure appellee's wells, if not destroy them.

There are other allegations to the effect that the Conroe field has been discriminated against in the order referred to, as compared to other coastal fields, such as regulating the space between wells to be drilled. It is further alleged that the Railroad Commission, its agents and servants, will seek to recover of appellee heavy penalties for violating the above-mentioned proration order unless enjoined, and that defendant Van Zandt, supervisor under the Railroad Commission, and W. B. Browder, county attorney of Montgomery county, will co-operate with the Railroad Commission, if not enjoined, in furnishing evidence upon which suits for penalties may be brought. It is also alleged that the Acts of the First Called Session of the Forty-Second Legislature (chapter 26), because it provides for the recovery of heavy penalties for violating orders of the Railroad Commission, does not give appellee due process of law, and says that such act of the Legislature is so vague and uncertain that no operator or citizen would know whether he was violating the same. Other unreasonable features are charged against the proration order referred to. Appellee prayed for a temporary restraining order and injunction against the enforcement of the order of the Railroad Commission referred to, and that such injunction so prayed for be made permanent on final hearing. The petition was verified by the president of appellee corporation on the 23d day of September, 1932, and on the same day was presented to Hon. S. A. McCall, judge of the Ninth judicial district of Texas, who indorsed thereon the following order:

"This, the 23rd day of September, 1932, the foregoing petition coming on to be considered by the undersigned Judge, in Chambers, the same has been examined and considered, and I assume jurisdiction of this case and order it filed.

"It is ordered, adjudged and decreed that a temporary restraining order issue against the Defendants, and each of them, as prayed for by the plaintiff, to continue until the further orders of this court that may be signed and entered herein. The parties are advised of the desire and purposes of the court to hear, at the convenience of the parties, any motion of any defendant that may be filed and desired heard herein, and of the further desire and purpose of the Court to hear such motion within ten (10) days of the date hereof, the Clerk will issue notice to the Defendants forthwith; provided, however, that the plaintiff shall first file a good and sufficient bond, to be approved by the Clerk, in the sum of One Thousand Dollars ($1,000.00), payable to the undersigned Judge of this Court, for the use and benefit and protection of the defendants named herein, and each of them, and otherwise conditioned as provided by law.
"S. A. McCall, Judge Ninth Judicial District of Texas."

Bond was given, as provided, and writ of injunction issued. The writ enjoined the Railroad Commission from enforcing the order of the Railroad Commission dated September 19, 1932, "until the further order of said court."

Thereafter appellee, on October 1, 1932, presented to the Hon. S. A. McCall, judge of the Ninth judicial district, Montgomery county, Tex., a motion wherein it is recited that the Attorney General of the state of Texas had ordered a transcript of the proceedings in this cause from the district clerk of Montgomery county with the intention of perfecting an appeal from the order of September 23, 1932, and, while denying the right of appeal, stated that he did not want any previous orders to lapse, and requested that, pending appeal, the former order be continued in full force and effect for a period of ten days, or until and if a valid appeal should be perfected to the Court of Civil Appeals at Beaumont, Tex. The district judge endorsed on said motion the following order:

"Fiat.

"In Chambers, Conroe, Texas.
"October 1, 1932.
"The above and foregoing motion having been presented to me on this the 1st day of October, 1932, and being of the opinion that said motion shows good cause for the extension of my order heretofore entered herein, on September 23rd, 1932, it is accordingly ordered that said temporary restraining order issued by me on September 23rd, 1932, be and the same is hereby in all respects extended for a period of ten days, and subject to the

further orders of this court made and entered herein.

"The Clerk of the Court will issue appropriate notices.

"S. A. McCall, Judge of the 9th Judicial District, Montgomery County, Texas."

The original transcript, which did not contain the last order mentioned, was filed in this court on October 4, 1932, although the transcript was certified by the clerk of the Montgomery county district court on the 27th day of September, 1932, and delivered to an Assistant Attorney General. A supplemental transcript has been filed which contains the last-mentioned order. This appeal is before us on appellee's petition and the two orders, as no evidence was heard by the judge of the court below.

■ Appellee has filed a motion to dismiss the appeal on the ground that the orders hereinbefore referred to are only temporary restraining orders, from which no appeal will lie. The majority of the court is of the opinion that the order of September 23, 1932, is a temporary injunction, and that the order of October 1, 1932, did not change its character, while Chief Justice Walker is of the opinion that the original order is a temporary restraining order, but, if it is a temporary injunction, the order of October 1, 1932, made it a temporary restraining order, and that this court is without jurisdiction to entertain this appeal. Judge Gaines, in Riggins v. Thompson, 96 Tex. 154, 71 S. W. 14, 15, has classified the different kinds of injunctions as follows: "We understand that, under the practice of the American courts, three species of injunctions may be issued: (1) A restraining order, which is defined to be: 'A restraining order is an interlocutory order made by a court of equity upon an application for an injunction, and as part of the motion for a preliminary injunction, by which the party is restrained pending the hearing of the motion.' Bouv. Law Dict. (2d Ed.). (2) One which is intended to operate, and which does operate unless dissolved by an interlocutory order, until the final hearing. And (3) a perpetual injunction, which can be properly ordered only upon the final decree."

In that case the district judge to whom the petition for injunction was presented, set the matter down for hearing on a specific date in Waco and a restraining order was granted pending such hearing. In the order, the clerk of the court was directed to cite the defendants to appear at the time and place named, and show cause why a permanent injunction should not issue. The judge making the order was not the judge of the district where the suit was to be filed, the regular judge being out of the state, and the hearing was set before a judge other than the one making the order. Judge Gaines held that the restraining order expired on the date set for the hearing in Waco, and that the hearing was to determine whether an injunction should be granted to remain in force during the pendency of the suit. He held that the district judge erroneously stated that the hearing was to determine whether a permanent injunction should be granted. It was obvious that a final hearing could not be had on the date named, as the term of court did not convene until after the time specified. We make the following quotation from the opinion: "The clerk was required to issue a restraining order 'pending such hearing.' We think this means the same as if the words had been 'until and pending such hearing,' and that the intention was to limit the operation of the order until such time as the parties could be heard upon the issue whether, under the allegations in the petition and answer, should one be filed, an injunction, to remain in force until the final disposition of the case, should be granted."

In our opinion, the order of September 23d, now under consideration, did not fix a time and place for a hearing to determine whether a temporary injunction should be granted. It is specifically provided that the order shall "continue until further orders of this court that may be signed and entered herein." The judge granting the injunction expressed a willingness to hear any motion that the defendants might make within ten days, but the time and place for hearing a motion which might be made by the defendants was left to be fixed by agreement of the parties. The hearing contemplated, by the decisions and authorities as we construe them, is on the allegations of plaintiff's petition and not on a motion of the defendant. The defendant might not care to file a motion. The order does not provide that it shall expire in ten days, but, to the contrary, indicates that it will continue in force, unless the defendant makes a motion to set it aside. In Griffith v. State, 210 S. W. 293, 294, the El Paso Court of Civil Appeals was considering an appeal from the following order: "The above and foregoing petition, verified as shown, was presented to me on January 14, 1919, and I hereby set down for hearing the matter of issuing the restraining order as therein prayed for, and I hereby set such hearing for Saturday, January 25, 1919, at Upland, in Upton county, Tex., at the courthouse, at 3 o'clock p. m., but will, in the event of an agreement between relator, Ainsworth, and defendant; Griffith, have such hearing at the courthouse in San Angelo, Tex. Under the facts stated in the petition the defendant, Griffith, would not receive any warrant or salary prior to the second Monday in February, 1919, but, since it is possible that a hearing may not be had prior to that time, upon the application of the relat-

or for an injunction, the defendant, Griffith, is hereby temporarily restrained from receiving from the county clerk of Upton county, Tex., or from any one, any warrants, script, or any kind of order for salary as county judge of Upton county, Tex., or as ex officio superintendent of public schools of said Upton county, Tex., and is so temporarily restrained from receiving salary as the holder of either of said offices in any form from any one, and the county clerk of Upton county, Tex., is hereby instructed and directed to issue an order directed to said H. B. Griffith in accordance with the terms of this fiat. Signed at Ft. Stockton, Tex., this January 14, 1919,' and signed by the judge."

There a motion to dismiss the appeal was filed on the ground that the order was a temporary restraining order. Judge Walthall held that the order left it uncertain as to when and where the hearing, if any, was to take place, and held it to be a temporary injunction. He said: "It is not clear from the judge's fiat, from which the character of the injunctive order must be determined, that the order was to operate only until a hearing was had, at a fixed time or at a time to be definitely fixed. If the order is to be regarded as a restraining order merely, it had no life after 3 o'clock January 25, 1919, the time set for the hearing. Ex parte Andrew Zuccaro, 106 Tex. 197, 163 S. W. 579, Ann. Cas. 1917B, 121. We think the order entered might well be considered a temporary injunction as distinguished from a temporary restraining order effective only until a time during which it has life as fixed in the judge's fiat."

Chief Justice Cureton, in Ex parte Olson, 111 Tex. 601, 243 S. W. 773, 777, discusses the distinction between temporary restraining orders and temporary injunctions, and, in holding that the order being considered in that case was a temporary injunction, said: "The court did not set the petition down for hearing on the application for temporary injunction and grant a restraining order until the date of such hearing, as he could under article 4651, Revised Statutes. On the contrary, he granted a temporary injunction outright, as is plainly evidenced by the language of his fiat indorsed on the petition, as well as by the writ of injunction itself. The return date named in the writ of injunction issued by the clerk was merely the specification of the term of court, as required by subdivision 5 of article 4656, setting up the requisites of writs of injunction. The order was clearly a temporary injunction, and continued in effect, although no trial of the case has yet been had, and will so continue, even on appeal, unless modified by the court. Revised Statutes, art. 4654; Ex parte Roper, 61 Tex. Cr. R. 68, 134 S. W. 334, 338; 22 Cyc. 982."

High on Injunctions (4th Ed.) p. 6, defines interlocutory or temporary injunctions as follows: "Interlocutory or preliminary injunctions are such as are granted, to-wit, before final hearing, generally upon the filing of the bill, and continue until the coming in of the answer, or until a hearing upon the merits, or the further order of the court;" and then distinguishes this character of injunction from a temporary restraining order in the following language: "A temporary restraining order is distinguished from an interlocutory injunction in that it is ordinarily granted merely pending the motion for a temporary injunction, and its life ceases with the disposition of that motion and without further order of the court; while an interlocutory injunction is usually granted until the coming in of the answer, or until the final hearing of the cause, and stands as a binding restraint until rescinded by the further action of the court."

It has been urged that, if the order of September 23, 1932, was a temporary injunction, then the order of October 1, 1932, changed it to a temporary restraining order. We overrule this contention. This order extends the operation of the order of September 23d for a period of ten days, this meaning, we think, that, when the first order expired, according to its terms the second order would keep it in effect ten days longer. If we are correct in our conclusion that the first order did not fix a day certain for it to expire, then the second order added nothing to it.

Judge Brown, in Baumberger v. Allen, 101 Tex. 352, 107 S. W. 526, 527, held that, where a temporary injunction had been granted and was in force "until the further order of the court," as in the case under consideration, the entry of another order continuing it in force was wholly unnecessary and did not grant a new injunction. The order of October 1st did not provide a time and place for a hearing on the petition. We do not believe that it was ever contemplated that a court would have the right to extend, even temporary restraining orders, from time to time without providing a hearing, and thus defeat the defendant's right of appeal. If the original order could be extended for a definite period without a hearing, then such extensions could be continued indefinitely. It appears in a supplemental transcript in this case that the judge below continued the order of October 1, 1932, for ten days additional. This order was made after the transcript was filed in this court, and therefore is not before us for consideration.

The fact that the orders under consideration were called temporary restraining orders does not control their legal effect. 32 Corpus Juris, p. 28, says: "Whether an order is a restraining order of a temporary injunc-

tion must be determined from its form and substance. The restraint which the order purports to impose, and not the name given to it, determines its true name and character."

In Griffith v. State, supra, the order being reviewed was termed by the judge granting it a temporary restraining order, but the court held it to be a temporary injunction. The motion to dismiss the appeal is therefore overruled.

■ Appellants contend that the district court of Montgomery county did not have jurisdiction to entertain the suit of appellee to enjoin the enforcement of the order of the Railroad Commission, but that such suit could only be brought in the district court of Travis county. In support of this contention they cite section 8, chapter 26, Acts of the First Called Session of the 42nd Legislature (1931). This is now given as article 6049c, § 8, Vernon's Ann. Civ. St. This is a part of what is generally known as the proration or conservation act. Section 8 reads as follows: "Any interested party affected by any rule or order made or promulgated by the Commission, under the terms of this Act and who may be dissatisfied therewith, shall have the right to file a suit in a court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, as defendant, and ask for such relief as may be necessary to annul, correct or modify such rule or order so promulgated by the Commission. Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court. In all trials under this section, the burden of proof shall be upon the party complaining of such rule, regulation or order and such rule, regulation or order so complained of shall be deemed prima facie valid until otherwise shown."

And section 10 of the same act (Vernon's Ann. Civ. St. art. 6049c, § 10) in so far as it is pertinent to the question under consideration, is in the following language: "No injunction shall be granted against the Railroad Commission to restrain it from enforcing rules, regulations and orders made and promulgated by the Commission under the terms of this Act or of any conservation statutes of this State, relating to oil or gas except after notice to the Commission and a hearing."

Appellee contends that the requirement that suits attacking orders of the Railroad Commission shall be brought in Travis county pertains to a question of venue and not of jurisdiction. But it also contends that, if the Legislature was intending to limit the jurisdiction of district courts generally in such matters, the act would be in violation of article 5, § 8, of the Constitution of the state of Tex-

as, which vests in the judges of all district courts generally the power to issue injunctions. The above referred to articles of the statute have not been construed so far as we are able to ascertain, but a similar statute, article 6453, Vernon's Ann. Civ. St., was construed in Texas Steel Co. v. Fort Worth & Denver C. Ry. Co. (Tex. Com. App.) 40 S.W. (2d) 78, 82. The part of this article which applied to orders of the Railroad Commission fixing railroad rates is in the following language: "If any railroad company or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the Commission, such dissatisfied company or party may file a petition setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge, classification, or order, or to either or all of them, in a court of competent jurisdiction in Travis County, Texas, against said Commission as defendant."

Judge Critz of the Commission of Appeals, in answer to certified questions, held that under this statute an order of the Railroad Commission could not be collaterally attacked in the district court of Tarrant county. He said: "The rules and rates of the commission are matters of general public interest, as well as interest to shippers and carriers. If an order of the commission, lawful on its face, can be collaterally attacked in the various courts and counties of the state on grounds such as those urged in the instant case, interminable confusion would result, and railroad companies, though honestly endeavoring to obey the law and the orders of the commission could be mulcted in large sums in damages and penalties, and the orders and rates of the commission rendered hazardous to obey."

At the conclusion of this opinion Judge Critz further said: "What we have said settles the issues of this case, and demonstrates that this suit cannot be maintained at all in the district court of Tarrant county, Tex."

To the same effect is the holding by our Commission of Appeals in West Texas Compress & Warehouse Co. v. Panhandle & S. F. Ry. Co., 15 S.W.(2d) 558, 561. This opinion was also written by Judge Critz, and he there said: "By the plain and unambiguous language of article 6453, R. C. S. 1925, it is provided that, if any railroad company or other party at interest is dissatisfied with any rate, classification, rule, etc., adopted by the railroad commission, such dissatisfied party may file his petition, etc., in a court of competent jurisdiction in Travis county, against the commission as defendant. This statute is exclusive in its very nature. A construction that it is not exclusive would violate all known rules of statutory construction, and lead to chaotic conditions with reference to the proceedings, rules, etc., of the commission. Certainly in the face of such provisions as are contained in articles 6452 and 6453, supra, col-

lateral attacks on orders, rules, etc., of the commission cannot be tolerated."

Further in the opinion, the court also said: "Under articles 6452, 6453 and 6454, R. C. S. of Texas 1925, the only court having original jurisdiction to set aside, annul, or in any manner modify, a rule of the commission, is the district court of Travis county, and that in a direct proceeding brought for that purpose, with the railroad commission made a party."

Appellee says that these cases are not in point because they were dealing with suits between shippers and railroad companies where the Railroad Commission was not a party, and therefore did not constitute direct attacks, and that the statements quoted were not necessary to a decision of the cases. It is true that the case under consideration involves a direct attack on an order of the Railroad Commission, but certainly comes clearly within the terms of the statute. These opinions, we think, do express the opinion of our Supreme Court as to how such statutes should be construed.

There is nothing new or novel with reference to a statute providing that certain kinds of litigation shall be limited to certain district courts in Texas and taking such cases away from all other district courts of the state. Article 8307, § 5, Vernon's Ann. Civ. St., provides that suits to set aside a ruling of the Industrial Accident Board shall be brought in the county where the injury occurred. In construing this statute, our courts hold that such suits must be brought in the county where the injury occurred, and that it is not a question of venue but one of jurisdiction. The case of United States Fidelity & Guaranty Co. v. Lowry (Tex. Civ. App.) 219 S. W. 222, construed this statute as being a venue statute, but it was overruled in Oilmen's Reciprocal Ass'n v. Franklin, 116 Tex. 59, 286 S. W. 195, 197, this decision holding that the bringing of the suit in the county where the injury occurred was jurisdictional. In the Franklin Case it was there urged, as it is here, that the Legislature had no power to take away from the district courts generally the power to hear and determine such suits. Judge Nickels held in this case that such suits were not cognizable under the common law, but existed only by virtue of the statute. He said that section 8, art. 5, of the state Constitution, authorized district courts to exercise "such other jurisdiction, original and appellate, as may be provided by law." He therefore held that the Legislature had authority to take away the potential jurisdiction of all the district courts in the state to entertain such suits, except where the injury occurred. To the same effect is the decision by our Supreme Court in Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, 1088, in an opinion by Chief Justice Cureton. It was there held that as causes growing out of the Workmen's Com-

pensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.) are in derogation of the common law, and exist purely by reason of the statute, that the statutory provisions are mandatory and exclusive, and must be complied with. Judge Cureton there said: "Besides, in special proceedings not within the common-law jurisdiction, the court's statutory designation of the venue is mandatory and jurisdictional."

The Commission of Appeals, in Texas Employers Ins. Ass'n v. Evans, 117 Tex. 113, 298 S. W. 516, in an opinion by Judge Short, considered venue statutes generally in connection with this particular statute, and held that, while venue statutes generally were not construed as being mandatory, this particular statute was mandatory and jurisdictional. The Railroad Commission of Texas is not created by the Constitution, and its duties are not prescribed by the Constitution or the common law. Section 30 of article 16 of the Constitution of Texas provides that, when a Railroad Commission is created by law, it shall be composed of three commissioners, who shall be elected by the people at a general election for state officers, and that their terms of office shall be six years. Our Supreme Court, in an opinion by Judge Pierson, in City of Denison v. Municipal Gas Co., 117 Tex. 291, 3 S.W.(2d) 794, held that the Railroad Commission of Texas was not created by the Constitution but by the Legislature, and that its duties were prescribed by the Legislature. That case involved a proceeding to prevent the regulation of gas rates by the Railroad Commission. It was there contended that the act authorizing the Railroad Commission to regulate the gas rates was in violation of the Constitution. This contention was overruled. Suits, therefore, attacking orders of the Railroad Commission are purely statutory, and the decisions construing the Workmen's Compensation Act above referred to are in point, in our opinion.

Article 4631, R. S., provides that suits for divorce shall be brought in the county where the plaintiff shall have resided for six months next preceding the date of filing the petition. There can be no question that all district courts have potential jurisdiction to hear and determine divorce suits, but this statute has been construed to be a jurisdictional statute and not one of venue. Haymond v. Haymond, 74 Tex. 414, 12 S. W. 90; Gallagher v. Gallagher (Tex. Civ. App.) 214 S. W. 516; Lawler v. Lawler (Tex. Civ. App.) 15 S.W.(2d) 684.

Article 4656, R. S., provides: "Writs of injunction granted to stay proceedings in a suit, or execution on a judgment, shall be returnable to and tried in the court where such suit is pending, or such judgment was rendered."

This statute has been construed to be mandatory and jurisdictional. Gohlman, Lester & Co. v. Whittle, 115 Tex. 9, 273 S. W. 806; Salamy v. Bruce (Tex. Civ. App.) 21 S.W.(2d) 380.

We could give many other instances where the Legislature has provided that exclusive jurisdiction in certain causes is vested in certain limited district courts. It is contended, however, by the appellee, that the order here sought to be enjoined is void, and therefore can be attacked anywhere. Of course, if the order is void on its face, then it would be subject to attack wherever and whenever an attempt was made to enforce it. There can be no question, we think, that the Railroad Commission would have the power to issue orders respecting the flow of oil or gas or making other regulatory measures, provided the law under which it is acting is a valid law. The Railroad Commission is a quasi judicial body, and its orders, regular on their face, are not subject to collateral attack. Texas Steel Co. v. Fort Worth & Denver Ry. Co., supra, and cases there cited. The fact that the Railroad Commission acted unwisely or unfairly does not make such order void. It therefore would be necessary to bring proceedings in Travis county in the manner provided by the statute to have such orders corrected or set aside.

Appellee says the order involved is void and can be collaterally attacked in any court for the reason that the act of the Legislature under consideration violates the due process clause and Fourteenth Amendment to the Constitution of the United States. Article 16, § 59 (a), of the Constitution of the state of Texas, makes it the duty of the Legislature to pass such laws as may be appropriate for the conservation and development of all the natural resources of the state. We presume it will not be denied that oil and gas are natural resources. This law was enacted for the express purpose of conserving oil and gas and preventing waste in the production and use of the same. We shall not attempt to go into a detailed consideration of the constitutional questions raised. The Austin Court of Civil Appeals, in Danciger Oil & Refining Co. v. Railroad Commission, 49 S.W.(2d) 837, 845, in an exhaustive opinion by Judge Baugh, held that a previous conservation act was valid, and disposed of the questions urged by appellee. Referring to the act of 1931, now being considered, Judge Baugh said: "It is also to be observed that most of the controverted issues herein raised in this case have been concluded by the legislative action of the 1st Called Session of the 42d Legislature subsequent to the trial of this case."

The Supreme Court has granted a writ of error, and the question of the constitutionality of the act is now before that court. The Supreme Court of the United States, in Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, holds, in our opinion, adversely to appellee on the constitutional questions raised.

In holding that the provisions of the act of the Texas Legislature we are considering are mandatory, we sustain appellant's contention that under section 10, as hereinbefore quoted, no injunction could be legally granted to restrain the enforcement of the rules, regulations, and orders of the Railroad Commission except after a notice and a hearing. Appellee says that this section of the act is invalid because the caption of the bill was not broad enough to authorize the incorporation of this provision. We are of the opinion that the caption was sufficiently comprehensive. The constitutional requirement relied on only requires that the general and ultimate object of the bill be shown. The details of the act are not required to be stated in the caption. We have examined the caption of the bill under consideration, and find that it covers, with more than usual minuteness, the subject-matter of the legislation. Tilton v. Dayton Independent School District (Tex. Civ. App.) 2 S.W.(2d) 889. This opinion was by Judge O'Quinn of this court, and application for writ of error was dismissed. See, also, Doeppenschmidt v. International & G. N. Railway Co., 100 Tex. 535, 101 S. W. 1080.

It being the opinion of the majority of this court that it has jurisdiction of this appeal, and it being the opinion of all members of the court that the district court of Montgomery county was without jurisdiction to grant the injunction, the judgment of the lower court is reversed, and the injunction dissolved.

The Railroad Commission has filed in this court a petition, or motion, praying for an injunction by this court restraining appellee, Alpha Petroleum Company, from violating the proration order promulgated by the Railroad Commission for the Conroe oil field, in Montgomery county. As we have held that we have jurisdiction to entertain this appeal, we hold that we have power to grant this injunction to protect our jurisdiction until the matter is taken to the Supreme Court by proper proceedings, and such injunction is hereby granted.