No. 28,230.

Mrs. Ellen Davison, *Appellant,* v. C. L. Davison, *Appellee.*

No. 28,232.

In re Application of Ellen Davison for Writ of Habeas Corpus.

(266 Pac. 650.)

SYLLABUS BY THE COURT.

1. DIVORCE — *Disposition of Property — Restoration to Transgressing Wife.* Where a divorce is granted to the husband for the fault or aggression of the wife, the statute requires that all property separately acquired by the wife after the marriage shall be restored to her, and this rule applies to gifts made to her by her husband, such as money to be deposited in a bank as a checking account to the wife, an automobile to which he had given her a bill of sale, and to shares of stock in a corporation which the husband had caused to be transferred to her on the books of the company.

2. SAME—*Disposition of Property—Necessity of Awarding Share of Husband's Property to Transgressing Wife.* Where a divorce is granted to the husband for the fault or aggression of the wife, the statute is mandatory that a share of her husband's real and personal property shall be awarded to her, and a judgment which awards her nothing, or nothing substantial, violates the statute and is erroneous.

Contempt, 13 C. J. p. 93 n. 43; 6 R. C. L. 528. Divorce, 19 C. J. p. 335 n. 65; 39 L. R. A. n. s. 193; 9 R. C. L. 446, 447. Sales, 35 Cyc. pp. 322 n. 86, 324 n. 2, 325 n. 17, 327 n. 32, 335 n. 19, 336 n. 27.

3. SAME—*Disposition of Property—Enforcement of Decree by Imprisonment—Habeas Corpus Where Performance Impossible.* In a habeas corpus proceeding ancillary to the judgment in a divorce case, where the petitioner was sent to jail for disobedience of certain orders of court and until she should comply therewith, which orders she could not obey or had contumaciously put beyond her powers of obedience, the capias for her incarceration was tantamount to life imprisonment and therefore void.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed April 7, 1928. Case No. 27,230 reversed; case No. 27,232, writ allowed.

F. *Dumont Smith,* Eustace *Smith,* Arthur T. *Symns,* all of Hutchinson, and W. E. *Stanley,* of Wichita, for the appellant.

J. R. *Beeching* and Aaron *Coleman,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Here we have an appeal in a divorce case, and an original proceeding in habeas corpus which can be disposed of as incidental to the appeal.

Plaintiff and defendant were married on February 23, 1927, and on May 20 of the same year she brought this action for a divorce on the grounds of extreme cruelty, habitual drunkenness, and impotency.

Defendant answered with a general denial and cross petition charging extreme cruelty on the part of the wife, and praying for a divorce in his behalf and for a disposition of property—the residence of the discordant couple, certain shares of corporate stock, bank deposits, and an automobile.

On issues joined the cause was tried by a referee, who made a detailed report favorable to defendant, and judgment was entered in his behalf against plaintiff, viz.:

"The findings of the report of the referee herein are hereby allowed and approved; defendant is granted an absolute divorce from the plaintiff; and plaintiff is hereby ordered to comply with the orders concerning the property of plaintiff and defendant and pay said two thousand dollars ($2,000) into court (allowance of six hundred dollars [$600] being made for the award to the plaintiff), deliver the car to the sheriff of Reno county, Kansas, and return the household goods taken from the residence property. And it is further decreed, ordered and adjudged that the defendant be given immediate possession of the real estate described in the defendant's answer and cross petition."

Plaintiff appeals, not complaining about the divorce being awarded to defendant instead of herself, but aggrieved at the trial court's

judgment concerning the property, which, she says, was disposed of in disregard of the letter and the spirit of the statute, the pertinent part of which reads:

" . . . If the divorce shall be granted by reason of the fault or aggression of the wife, the court shall order restoration to her of the whole of her property, lands, tenements, and hereditaments owned by her before, or by her separately acquired after such marriage, and not previously disposed of, and also such share of her husband's real and personal property, or both, as to the court may appear just and reasonable; and she shall be barred of all right in all the remaining lands of which her husband may at any time have been seized. . . . . " (R. S. 60-1511.)

Plaintiff's first complaint is concerned with the trial court's disposition of the residence property under this statutory rule. According to the referee's findings which were approved by the trial court, the residence property was conveyed to the plaintiff shortly before the marriage "for the purpose of protecting her in case of his death," and it was agreed by the parties that after they were married she would reconvey the property to defendant. It also appears that she complied with this agreement, and such a deed was executed by plaintiff and acknowledged before a notary. The deed disappeared, however, and it was not recorded. It cannot be said that the residence property was unqualifiedly owned by the wife before the marriage so as to bring it strictly within the statutory provision that the whole of the property owned by the delinquent wife before her marriage should be restored to her. Whether the residence property should be divided between the husband and wife, or awarded *in toto* to one or the other, is primarily a question for the trial court, if the letter and spirit of the statute giving the *erring* wife a just and reasonable share of her husband's real and personal property is otherwise duly respected. This latter point may presently be passed until the other items of property disposed of by the judgment have been separately considered.

The trial court ordered plaintiff to deliver $1,400 in cash to defendant. Touching this item the facts were these: Plaintiff had $600 of her own at the time of her marriage. Defendant gave her $200 in cash to open a bank account in her own name, but at her request he permitted her to deposit this $200 in his account in the First National Bank of Hutchinson and to check on his account. Seventeen days before she sued defendant for a divorce she checked out $1,000, and four days before she filed that action she checked

out a second $1,000. She deposited these sums to her own account in a bank in Wichita. The trial court's order required her to surrender this $2,000 less the $600 conceded to be her private funds at the time of her marriage. The mathematics of this item are slightly inaccurate, however, if there is nothing else erroneous about it. In requiring her to restore the $2,000 less the amount concededly her own, the. $200 should have been deducted as well as the $600. Manifestly the court's order to make restitution of the money should not have been for a greater sum than $1,200.

We will next consider the judgment order concerning the return of the automobile. The referee's finding reads:

"Defendant purchased the Buick sedan in this city after they were married, and at the time of the purchase the plaintiff requested that she be given the automobile in her own name. There was an objection on the part of the defendant, but he finally agreed with plaintiff, who suggested herself that she give to the defendant a diamond ring of the value of fifteen hundred dollars ($1,500); that he would make out a bill of sale to her of this automobile, and the bill of sale was made out and delivered to the plaintiff by defendant, but that the plaintiff failed and refused to deliver to the defendant the diamond ring which she valued at about fifteen hundred dollars."

Plaintiff complains of this ruling because it not only involves the propriety of the return of the car, but because it seems to violate the statute and the rules of substantive law. Whose automobile was it? Surely the plaintiff's. Not only was the evidence of the parties to that effect, but the bill of sale which the defendant caused to be executed to plaintiff and which he himself delivered had the legal effect of vesting the title in her. (*Denny v. Faulkner*, 22 Kan. 89, syl. ¶ 2; *Fontron Loan & Trust Co. v. Korzuszkiewicz*, ante, p. 725, 266 Pac. 649, this day decided; *Fredenburg v. Horn et al.*, 108 Ore. 672, syl. 15, 30 A. L. R. 1153, 24 R. C. L. 17; 35 Cyc. 335, 336.)

In the absence of an express contract, of which a mortgage is the most common example, there is no such thing as a vendor's lien in Kansas law. (*Felzien v. Wieck*, 118 Kan. 194, 234 Pac. 944, and citations.)

In 35 Cyc. 322 *et seq.* it is said:

"It is not essential to a transfer of the property in goods sold that the price should be actually paid, even where the buyer is not entitled to possession until such payment is made. . . . The title will also pass as against creditors and subsequent purchasers without payment, if there has been a delivery to the buyer."

Davison v. Davison.

"While sales made for cash or cash on delivery are not strictly speaking conditional sales, they are frequently so called, and are conditional in the sense that payment is to be precedent to or at least concurrent with delivery. So it is ordinarily held that where the sale is expressly for cash or cash on delivery, no title passes to the buyer until payment is made, unless the condition as to payment is waived by the seller, although there may have been a delivery of the goods." (p. 323.)

"Other cases, however, apply the general rule previously stated in regard to unconditional sales, holding that, if the goods are specific and the contract is otherwise complete, the property, unless a contrary intention appears, passes at once, subject to the seller's lien [where vendor's lien follows the goods—not in Kansas], so as to place the goods at the risk of the buyer, although he is not entitled to possession until payment is made or tendered." (p. 325.)

"The condition as to payment or security is one which may be waived by the seller, in which case title to the goods sold will vest in the buyer, although the condition has not been performed. Such condition will ordinarily be held to be waived by an unconditional delivery of the goods by the seller to the buyer without requiring payment or security." (p. 327.)

The referee found that defendant's objection to placing the title to the automobile formally in plaintiff's name (the car itself apparently having already been given to her) was overcome by defendant, "who suggested herself that she give to the defendant a diamond ring of the value of $1,500." This was not a finding that she acquired the car pursuant to a contract of barter and exchange. And even if there had been an outright barter and sale of the car for the ring by defendant to plaintiff, and she failed to deliver the agreed consideration for it, defendant, having given her an unqualified bill of sale, would have no lien on the car for the delivery or payment. It therefore appears that so far as the disposition of the automobile was concerned the referee's recommendation and the trial court's order were erroneous and made in disregard of the law of sales as well as that express mandate of the statute:

". . . The court shall order restoration to her [a wife divorced for her fault or aggression] the whole of her property . . . by her separately acquired after such marriage. . . ."

The same rule necessarily applies to the corporate stock of the United Power and Light Corporation of Kansas which defendant had caused to be transferred on the books of the corporation to his wife. That transfer operated to pass title and was a constructive delivery. (*Hess v. Hartwig*, 83 Kan. 592, syl. ¶ 2, 112 Pac. 99; *Barnhouse v. Dewey*, 83 Kan. 12, 109 Pac. 1081.) There was no finding that this

transfer and gift was conditional, other than that defendant should control the stock and collect the dividends, and the fact that the stock was not manually delivered to her after being transferred on the books of the corporation was of no consequence—the conditions of the gift being what they were. Why should not this gift be upheld according to its terms? It is not only statutory law that property separately acquired by a wife during the marriage shall be regarded as her property (although she is divorced because of her own fault), but the decided cases are to that effect.

Thus in *Lister v. Lister*, 35 N. J. Eq. 49, the wife was divorced from her husband on the ground of adultery. During the existence of the marriage relation the husband at various times purchased certain parcels of real estate and caused the title of two of them to be conveyed to his wife. He had bought the latter two parcels with his own money, and afterwards used them as his own and paid the taxes on them. Later, he sought to recover title to these lots on the theory that they were impressed with a trust for the benefit of himself and his wife and family. The deed of conveyance contained no intimation of a trust. The court ruled against the complainant. The headnotes read:

"Where lands are bought and paid for by a husband, but the title thereto put in the name of his wife, the ordinary presumption of a settlement, which in this case was fully corroborated by his actions and declarations at the time of the purchase and transfer, cannot be rebutted by his subsequent declarations, nor by his present declarations of his intention then.

"Nor will equity aid him on account of the subsequent adultery of the wife, and his consequent divorce from her therefor."

In the opinion it was said:

"Nor can any relief be granted on the ground that the defendant has been guilty of adultery, and the complainant has been divorced from her for that cause. In this connection, it is urged that to permit the defendant, who has been guilty of infidelity towards the complainant, who, for that cause, has by law been divorced from her, not only to deprive him and their children of all benefit of the property in question, but with it to live, perhaps in luxury, with the partner of her guilt, is contrary to equity, and is a wrong for which equity will find a remedy. But that is no ground for relief. In *Dixon v. Dixon*, 8 C.E. Gr. 316, it was held that a conveyance made by a husband to a trustee, for the use of his wife, on the execution of articles of separation between them, would not be set aside on account of the subsequent adultery of the wife, while living apart from her husband. See, also, s. c., 9 C. E. Gr. 133. The adultery of the wife has been held to be no defense to a suit for specific performance of marriage articles. *Sidney v. Sidney*, 3 P. Wms. 269.

Davison v. Davison.

In a suit for an annuity under an agreement of separation between husband and wife, a plea of subsequent adultery of the wife and a consequent divorce was held bad. *Jee v. Thurlow*, 2 B. & C. 547; *Field v. Serres*, 4 B. & P. 121; *Baynon v. Batley*, 8 Bing. 256. See, also, *Forrest v. Forrest*, 9 Abb. Pr. 289. In *Seagrave v. Seagrave*, 13 Ves. 439, there was a separation between husband and wife on account of the adultery of the latter, and a bond was given by the husband for the support of the wife, and it was held, on bill filed by the wife, that the fact that she had subsequently been guilty of adultery did not disentitle her to relief." (p. 56.)

From an exhaustive footnote to this case we glean the following:

"Subsequent misconduct of the wife does not affect or invalidate a settlement, even where a divorce may have been obtained by the husband therefor. (*Bent v. Bent*, 44 Vt. 555; *Edgerly v. Edgerly*, 112 Mass. 175; *Orr v. Orr*, 8 Bush, 156; *Baggs v. Baggs*, 54 Ga. 95; *Johnson v. Johnson*, Walk. Ch. 309; *Porter v. Porter*, 27 Gratt. 599; *Charlesworth v. Holt*, L. R. (9 Exch.) 38. See *Marrall v. Marrall*, L. R. (6 P. D.) 98; *Weathersby v. Weathersby*, 39 Miss. 652; *Huntley v. Huntley*, 6 Ired. Eq. 514; *Vreeland v. Ryno*, 11 C. E. Gr. 160, 12 C. E. Gr. 522.)" (p. 51.)

In *Vickers v. Vickers*, 133 Ga. 383, a husband had conveyed a parcel of land to his wife for a nominal money consideration, but the actual consideration was love and affection. Later he bought and caused other parcels of land to be conveyed to her, "because of his great love for her." Later he was forced to leave her on account of the "boisterous, cross, contentious, impatient and quarrelsome conduct" of his wife. He claimed that the properties thus standing in the name of the wife were impressed with an implied trust in his behalf, but the court ruled against him, saying:

"But an absolute gift will not be cut down by implication into a trust merely because the donor hoped and believed at the time the gift was made that the donee would share the beneficial interest of the property with him or with a third person. . . . If a husband buys and pays for land and takes a deed in his wife's name a presumption arises that he intends to make an absolute gift to her, and in order to overcome this presumption he must show something which raises an obligation in her to hold the property in trust for him. . . . No such obligation appears from the allegations of the plaintiff's petition. On the contrary, it is apparent that at the time the legal title was placed in the wife, he intended to make an absolute gift of the property to her, believing and hoping that their domestic life would continue peaceful, and that therefore she would allow him to participate in the enjoyment of the beneficial use of the property; but that subsequently they had a disagreement, and on this account he is seeking to revoke the gift and reclaim the property. An absolute gift cannot, by events transpiring after it is made, be metamorphosed into a trust. Equity will not allow a donor to reclaim property, the title to which he has unconditionally placed in another, merely because he has had a quarrel with the donee." (p. 384.)

This rule works both ways. In *Chase v. Phillips,* 153 Mass. 17, it was held:

"A trust deed, by which a married woman settles property belonging to her upon her husband will not be set aside because of his subsequent adultery, if the deed contains no condition that he shall continue chaste."

In *Kinzey v. Kinzey,* 115 Mo. 496, 20 L. R. A. 222, where the wife was divorced on account of adultery, her ex-husband sought to recover real estate the title to which he had caused to be vested in the wife and her children during the existence of the marriage relation. But the court ruled against him, saying:

"By the statute law of this state, a married woman who commits adultery forfeits dower in the property of her husband (Rev. Stat. 1889, § 4508), affords a good cause of action to him for a divorce from the bonds of matrimony (§ 4500), and, if found guilty in such action, forfeits 'all rights and claims under and by virtue of the marriage' (§ 4508). While the title of Mrs. Kinzey and her children to the property in question was acquired during the marriage, and indirectly from her husband, and she was found guilty of adultery in the divorce suit, yet these facts did not operate a forfeiture of any of her rights to the property, for the simple reason that those rights were vested rights, acquired by grant, and not 'under and by virtue of the marriage,' and upon which the sentence of divorce had no effect. (Bishop, Mar. & Div. § 1623.) But counsel for appellant seem to contend that this case is one calling for the interposition of a court of equity in the interest of morality, upon some theory of fraud to be deduced from the premises by reason of the confidential relations existing between husband and wife. . . . It may be true that at the time this settlement was made Kinzey may have thought that as his wife always had been, so she would thereafter always continue to be, faithful to her marital vows, and that, if he had known that she would thereafter prove false to them, he would not have made the settlement upon her and her children that he did make. But that he was mistaken in this reasonable expectation, as subsequent events proved, affords no pretext for the intervention of a court of equity to deprive her of property which he had, upon good consideration, theretofore voluntarily settled upon her. . . . He was simply mistaken in the moral worth and virtue of one of the objects of his bounty. From the consequences of such a mistake of judgment a court of equity cannot relieve him." (pp. 500, 502.)

Turning next to the appellant's general grievance that the trial court ignored that feature of the statute which provides that even a wife divorced for her own fault or aggression shall be accorded—

". . . A share of her husband's real and personal property, or both, as to the court may appear just and reasonable. . . ."

That statutory provision conferred upon this plaintiff a property right which came into full potency when she was divorced. It was

prejudicial error to disregard it. That the divorce was granted because of her fault was not a ground for disregarding the statute, but laid the precise basis for its allowance. The particular "fault or aggression" of the plaintiff charged in defendant's cross petition was "extreme cruelty," and the evidence to support that charge was that she caused him to be arrested and jailed for drunkenness. We were advised in oral argument that the woman was a "gold digger," but issues were not joined on that point; the divorce was not granted thereon; nor is that propensity a statutory ground of divorce.

We have often said that the trial court has a wide discretion in such matters, and its exercise of that discretion, unless clearly abused, will not be disturbed on appeal. But that discretion must be exercised in whole-hearted good faith. It must be guided by the statute, not by the chancellor's private opinion of what the statute ought to be.

Both parties cite *Snodgrass v. Snodgrass*, 40 Kan. 494, 20 Pac. 203, in which it was held:

"Where a wife wrongfully procures the title to the homestead and other property to be transferred direct from the husband to herself, and then drives him from the premises, and he afterward obtains a divorce because of her wrongs, the property should be divided equitably between the parties, and he should have a fair share of the same." (Syl.)

A later decision to the same general effect was *Corbett v. Corbett*, 101 Kan. 1, 165 Pac. 815, where it was said:

"In a suit by the husband for divorce the petition alleged that the defendant had induced him by means of threats and duress to convey his real estate to her, and asked that the deeds be canceled. The court canceled the deeds, granted plaintiff a divorce, and divided the real estate between the parties. *Held*, regardless of whether the evidence justified the cancellation of the deeds, the court on granting the divorce had the power to make an equitable division of the property; and that the division, appearing to be fair and equitable, will not be disturbed." (Syl.)

Anent the decisions just cited it has to be observed that both take it for granted that there must be some division; and a judgment giving the delinquent wife nothing at all out of her husband's estate is not a compliance with the statute.

In view of the foregoing, how should this appeal be disposed of? It would be in the interest of the litigants to order a proper judgment in appellant's behalf and put an end to this controversy, but certain features of the case prevent our doing so. The trial court's award of the plaintiff's automobile to the husband is erroneous and

must be set aside. The award to the husband of the corporate stock standing in the wife's name is also set aside, and that transfer in her behalf must be confirmed, subject, of course, to the conditions imposed by the donor, which were that he should control the stock (presumably its voting power) and collect the dividends thereon during his lifetime. But there is the matter of the $1,400 (corrected to $1,200), which the trial court had power to award to the husband. That finding cannot be disturbed. If plaintiff cannot pay that sum, it can be made a lien on her interest in the corporate stock. (*Johnson v. Johnson,* 66 Kan. 546, 72 Pac. 267.) As to the matter of a share of defendant's property to be awarded the plain- tiff as the statute provides, we have not sufficient data upon which to make an order or even a suggestion other than that this statutory "share" should be whatever is "just and reasonable" under all the circumstances. (*Miller v. Miller,* 97 Kan. 704, 156 Pac. 695, and citations.)

The judgment of the district court is reversed and the cause re- manded for further proceedings consistent herewith.

Turning next to the ancillary case in habeas corpus, the trial court ordered the plaintiff to surrender the automobile and the $1,400 she was supposed to have in a bank in Wichita. She disobeyed this order, and a citation of contempt was issued for her arrest. The record is not clear as to what followed, but according to the sheriff's return to the writ a hearing of some sort was had, following which the petitioner was found guilty of contempt of court and sent to jail for no specified length of time. Elsewhere it appears that the petitioner offered to show cause why she was not willfully in con- tempt. This privilege was apparently denied her. According to her verified petition she would have shown that she could not comply with the order for the return of the automobile because the sheriff had seized it, and that the money in the Wichita bank had all been expended, partly for necessities of life while this litigation was pend- ing—she having neither asked nor received alimony in the interval— and the balance had been exhausted in necessary expenses connected with this litigation.

It need hardly be repeated that courts have inherent power to en- force their lawful orders by contempt proceedings, and may send recalcitrants to jail until such proper orders are complied with, but that elementary doctrine implies that the court's orders can be

obeyed.   Since the sheriff has seized the automobile and the money is gone, the incarceration of this hapless petitioner until she surrenders the car and produces the money is tantamount to life imprisonment, and therefore void.   (U. S'. Const., Fourteenth Amendment; Kansas Bill of Rights, § 9; *State v. Dent,* 29 Kan. 416; *In re Pierce,* 54 Kan. 519, 38 Pac. 812; *Dodson v. Butler,* 101 Ark. 416, 39 L. R. A., n. s., 1100 and note; 6 R. C. L. 528.)

In *Wohlfort v. Wohlfort,* 116 Kan. 154, 163, 225 Pac. 746, it was said:

"But an order committing to jail is the exercise of the ultimate power of a court of equity, and the prudent chancellor is careful that there be no mistake in its use.  It should be used only when it is clear, (1) that the original order is reasonable, (2) that the husband is able to comply with it without undue hardship, and (3) that his refusal to comply with it is willful to such a degree as to be contumacious, amounting to contemptuous disobedience. When this situation is made clear, then the chancellor not only has the power, but it becomes his duty, to issue the commitment.  The form of the commitment may be important.  If the husband has the amount of money he has been ordered to pay and contemptuously disobeys the order, his commitment should be until he pay, for in that case he has the means to obtain his own release; by making the payment the jail is unlocked to him.  If he does not have the money and has no property which he can readily convert into money it is obviously improper to commit him until the money is paid.  Such a commitment under those circumstances would be indefinite imprisonment, from which the husband could never release himself."

The writ is allowed and the petitioner discharged.

JOHNSTON, C. J., and MARSHALL and HOPKINS, JJ., dissent from the rules announced in paragraphs 1 and 2 of the syllabus, and so much of the opinion as pertains thereto.