**Ex parte Carl O. RAMZY, Jr., Relator.**

**No. B–498.**

Supreme Court of Texas.

Jan. 31, 1968.

Rehearing Denied Feb. 28, 1968.

————◆————

Philip S. Kouri and Jimmy Casteldine, Wichita Falls, for relator.

Spence, Martin & Richie, Howard Martin, Wichita Falls, for respondent.

SMITH, Justice.

In this original habeas corpus proceeding presented to this Court on October 9, 1967, the Relator, Dr. Carl O. Ramzy, Jr., seeks to be discharged from an order of the District Court of Jack County, Texas, committing him to jail for contempt. The facts were developed at two different hearings before different trial judges. The reasons for holding two hearings will be discussed later in this opinion.

On April 2, 1966, Rhoda Chambless Ramzy presented to the District Judge of the 43rd Judicial District of Texas, a petition for divorce wherein her husband, the Relator, was named as defendant. The petition not only alleged a cause of action for divorce, but sought to restrain the Relator from disposing of certain personal property owned by the community. The divorce action is still pending.

The court granted a temporary restraining order decreeing that "the defendant be and he is hereby enjoined and restrained, without bond, from selling, disposing of or secreting any of the community property of Plaintiff and Defendant, or placing the said property or any portion thereof beyond the Plaintiff's reach, including all real and personal property." The court further ordered that the Defendant-Relator appear "in the District Court room, Courthouse, Jacksboro, Jack County, Texas, on the 7 day of April, A.D. 1966, at 2 o'clock p. m.

to show cause, if any he has, why the Temporary Restraining Order herein prescribed should not be extended into a Temporary Injunction * * *."

On April 7, 1966, the court, after a hearing, granted a temporary injunction enjoining both the plaintiff and defendant from "selling, disposing of or secreting any of the property of plaintiff and defendant." Each party was ordered to return into court a verified complete inventory of all property and assets in his or her possession. The court's order granting the temporary injunction directed "the defendant not to dispose or remove any of the funds on deposit with or in safety deposit boxes in the Jacksboro National Bank, * * *, save and except that the defendant has a clinic account and personal checking account with the Jacksboro National Bank, Jacksboro, Texas, and in connection with such checking accounts the court further directs that the defendant shall in 10 days file an inventory of all of the assets which he has in his possession, a copy of which shall be delivered to the plaintiff's attorney herein, and upon the final trial of this cause all of the income and disbursements made from such accounts shall be audited, etc."

Thereafter, the plaintiff, on the 5th day of September, 1967, executed a "contempt affidavit" charging that the Defendant-Relator had violated the injunction by disposing of a coin collection described therein. The affidavit alleged that the coins were in the exclusive possession of the defendant and such coins were listed in the inventory filed by the defendant in accordance with the court's order.

The affidavit alleged and the defendant admitted at the contempt hearing on September 25, 1967, that the coin collection was no longer in Relator's possession. At this hearing, the attorneys for the plaintiff and defendant were both present and participated in the examination of the witnesses. It was specifically charged in the "contempt affidavit" that on "August 3rd,

1966, while said temporary injunction was in full force and effect, defendant sold a portion of said coin collection to a man by the name of Gean Cashdan for the sum of $2500.00."

"That on or about September 29th, 1966, the defendant sold a portion of said coin collection to a man by the name of M. A. Withers for the sum of $1508.60, while said temporary injunction was in full force and effect."

"That on some date subsequent to April 7, 1966, and while said temporary injunction was in full force and effect, the defendant disposed of all of the gold coins in said valuable collection. That the defendant claims and represents to the plaintiff, and even to defendant's own attorney in this cause, that he disposed of all of said coins by giving them to his children by one of his prior marriages."

On September 25, 1967, the court entered its judgment holding the Relator in contempt. The court found that,

" * * * the defendant has turned over to his children by a former marriage a portion of said coin collection consisting of United States gold coins. The Court finds that by the admissions of the defendant in this contempt proceeding said defendant at this time does not have in his possession any of said community coin collection which has any value whatsoever."

Based upon the findings so made, the court ordered and decreed:

"[T]hat the defendant, Carl O. Ramzy, Jr., be, and he is hereby, held guilty of contempt of this Court for his willful and intentional violation and disobedience of the order and temporary injunction of this Court issued and made in this cause on April 7th, 1966, and said defendant's punishment is hereby fixed at confinement in the County Jail of Jack County, Texas, for a period of seventy-two (72) hours, same being three full days, and a fine of One Hundred ($100.00) Dollars, together with all costs of this contempt proceeding incurred.

"It is further ordered and decreed by the Court that when the said defendant, Carl O. Ramzy, Jr., shall have served said 72 hours in the County Jail of Jack County, Texas, and shall have paid said $100.00 fine (or satisfied said fine by confinement in the Jack County Jail at the rate of $5.00 per day), and shall have paid the costs of this contempt proceeding, as punishment for his contempt of this Court, the said Carl O. Ramzy, Jr., shall continue to be confined in the County Jail of Jack County, Texas, until he shall have purged himself of all contempt of this Court by delivering to the possession of the District Clerk of Jack County, Texas, for safekeeping pending final trial of this suit for divorce, all portions of the coin collection delivered by defendant to Gean Cashdan, all portions of said coin collection delivered by the defendant to M. A. Withers, all portions of said coin collection delivered by the defendant to the Jacksboro National Bank of Jacksboro, Texas, and all portions of said coin collection delivered by the defendant to defendant's children by a former marriage, and all portions of said coin collection remaining in the defendant's possession or under defendant's control, whether of value or not, and wheresoever located.

"When the defendant, Carl O. Ramzy, Jr., shall have served said 72 hours in the Jack County Jail and shall have satisfied said $100.00 fine and all costs of this contempt proceeding, and shall have purged himself of contempt of this Court in the manner provided in the preceding paragraph of this judgment, said defendant shall be released from further confinement in the County Jail of Jack County, Texas."

Thereafter, on the 9th day of October, 1967, Relator presented his petition for writ of habeas corpus to this Court. The

petition was denied. On the 10th day of October, 1967, Relator filed an original petition for writ of habeas corpus in the 43rd Judicial District Court of Texas at Jacksboro, Texas. In the petition it was alleged that the Relator was unlawfully restrained of his liberty by the Sheriff of Jack County, and notice was served upon the Sheriff, Hubert Jackson. Thereafter, on the same date the petition was filed, a hearing was held before the Honorable Arthur Tipps, a District Judge who was regularly appointed to preside. The court heard evidence and a statement of facts, approved by Judge Tipps, was filed in this Court on October 11, 1967.

On October 12, 1967, the Relator filed in this Court a motion for rehearing of his petition for writ of habeas corpus. This motion was granted on October 12, 1967, and the cause was set for submission on November 15, 1967. The Relator was admitted to bail pending final disposition of the cause in this Court. We believe it is proper under all of the circumstances for this Court to consider the testimony introduced at this latter hearing as well as that given at the hearing on September 25, 1967, as being properly before us. The Relator testified at both hearings. Cashdan and Withers, the parties heretofore mentioned, testified only at the last hearing.

 Mrs. Ramzy has filed a brief in this Court in which she asserts that there has been a denial of "due process" in that the hearing on October 10, 1967, was held without notice to her or her counsel, and that the failure to give to her notice of the hearing deprived her of the right to offer evidence and the right to cross-examine the witnesses. We overrule this contention. A procedure by habeas corpus to be relieved of imprisonment for contempt can in no legal sense be regarded as a suit or controversy between private parties. In such a proceeding the petition for a writ of habeas corpus is for the relief of the *prisoner* and the *prisoner* only. It is to inquire why the liberty of the citizen is

restrained. We hold that the authority to grant the writ is conferred upon the Court or the judge, and that a proceeding by habeas corpus is a matter for the investigation of the judge. The writ of habeas corpus is designed for the purpose of giving a speedy remedy to one who is unlawfully detained. The very nature of a procedure by writ of habeas corpus dictates that it would be inconsistent to recognize on the one hand that the purpose of the writ is to obtain a speedy adjudication of a person's right to be free from illegal restraint, and on the other hand to compel the person to await service of notice of the proceedings upon some private party before the judge can proceed with the investigation. Paramount in cases of this nature is the basic premise that the purpose of the writ of habeas corpus is to obtain a speedy adjudication of a person's right to liberation from illegal restraint.

Since the Relator has complied with that portion of the court's order wherein his punishment for contempt was fixed at confinement in the County Jail of Jack County, Texas, for 72 hours, and a fine of $100.00, we are only concerned with the validity of the coercive portion of the judgment which orders that the Relator be confined in jail until he delivers to the District Clerk of Jack County, Texas, all of the coins described in the contempt judgment.

 There is no question but that the Relator has voluntarily and contemptuously disposed of the coins described in the injunction and in the judgment of contempt. However, we are to determine whether or not it is within the Relator's power to perform the act or acts which alone will purge him of contempt. A judgment of contempt imposing a coercive restraint is void if the conditions for purging the contempt are impossible of performance. Ex parte Gonzales, 414 S.W.2d 656 (Tex. Sup.1967); Ex parte Thetford, 369 S.W.2d 924 (Tex.Sup.1963); Ex parte Helms, 152 Tex. 480, 259 S.W.2d 184 (1953); Ex parte De Wees, 146 Tex. 564, 210 S.W.2d 145

(1948). Unless the contemner has the means by which he may purge himself of the contempt, he must be discharged from prison. This Court in *De Wees* expressly approved the language contained in the case of Staley v. South Jersey Realty Co., 83 N.J.Eq. 300, 90 A. 1042, 1043, L.R.A. 1917B, 113, wherein it was said:

> "In a 'civil contempt' the proceeding is remedial, it is a step in the cause the object of which is to coerce one party for the benefit of the other party to do or to refrain from doing some act specified in the order of the court. Hence, if imprisonment be ordered, it is *remedial in purpose and coercive in character*, and to that end must relate to something to be done by the defendant by the doing of which he may discharge himself. As quaintly expressed, the imprisoned man 'carries the keys to his prison in his own pocket.'" (Emphasis added.)

It is well settled that recalcitrants may be sent to jail and there confined until proper contempt orders are complied with, unless it is clear that the court's order cannot be obeyed. The power to administer punishment which is tantamount to life imprisonment cannot be exercised where it is not within the power of a person to perform. Davison v. Davison, 125 Kan. 807, 266 P. 650, 654, cited with approval in Ex parte De Wees, supra; Ex parte Rohleder, 424 S.W.2d 891 (Tex.Sup.1967).

An original habeas corpus proceeding in this Court is a collateral attack on the contempt decree. This Court does not evaluate facts. However, it is necessary for the Court to state the facts, and we treat the contempt order as void if the evidence offered at the hearing or hearings conclusively establishes that at the time of the contempt hearing it was not within the power of the Relator to perform the act or acts which would release him from the punishment authorized by the court's judgment. Ex parte Rohleder, supra; Ex parte Jones, 163 Tex. 513, 358 S.W.2d 370 (1962); Ex parte La Rocca, 154 Tex. 618, 282 S.W.

2d 700 (1955); Ex parte Tyler, 152 Tex. 602, 261 S.W.2d 833 (1953); Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000, 1003 (1947).

The judgment of contempt recites that the Relator shall continue to be confined in the county jail until he shall have purged himself of contempt, by delivering to the possession of the District Clerk (1) "all portions of the coins delivered to Cashdan," (2) "all portions of the coins delivered to Withers," (3) "all portions of the coins delivered to the Jacksboro National Bank," (4) "all portions of said coin collection delivered by the defendant to defendant's children by a former marriage," and (5) "all portions of said coin collection remaining in the defendant's possession or under defendant's control, whether of value or not, and wheresoever located."

We shall first consider the above designated items 1, 2, 3 and 5. The testimony as to these items may be summarized as follows: The inventory filed by Relator reflects that he had in his possession 3013 silver coins. The Relator testified on September 25, 1967, and to the same effect on October 10, 1967, that he had disposed of a portion of these coins which were in his possession when the writ was granted to Cashdan for the sum of $2500.00, and, that this sum was deposited in the Jacksboro Bank, and had been spent. The contempt judgment recites that these coins were no longer in the possession of the Relator. Cashdan testified on October 10, 1967, that he purchased coins from the Relator for $2500.00 by check. The check was introduced in evidence, and is a part of the statement of facts. Cashdan further testified that none of the coins were in his possession having been sold over the counter to numerous customers.

The Relator testified at both hearings that he had sold a portion of the coins to Withers for $1508.60, and that this sum was deposited in the bank and spent. Withers testified that he had purchased coins from the Relator; he paid the sum of

$1508.60 therefor; none of the coins were in his possession; the coins had been sold.

Relator testified on September 25, 1967, that as to the third transaction involving the coins delivered to the Jacksboro Bank, he "took $400.00 in U. S. Coins and put them in the Bank and got $400.00 worth of credit at the bank." The President of the Jacksboro bank testified on October 10th that if the Relator deposited coins in the bank, it would be impossible to identify them.

The testimony bearing upon that portion of the contempt judgment which ordered the Relator to deliver to the Clerk "all portions of said coin collection remaining in the defendant's possession or under defendant's control, whether of value or not, and wherever located," is that none of the coins remained in Relator's possession, and the court so found, as reflected by the September 25 order. The finding of the Court apparently has reference to silver and gold coins. Mrs. Ramzy testified at the hearing on September 25, 1967, that on August 23, 1967, she examined the books, ledgers, etc. in the possession of the Relator. This examination took place in the presence of Dr. Ramzy and the attorneys for the parties to the divorce suit. Mrs. Ramzy testified that these records reflected that Ramzy sold coins to Cashdan on August 3, 1966, for $2500.00; she saw the deposit slip; the books reflected a sale to Withers on September 9, 1966, for $1508.60; and that she saw the deposit slip for that sum. Mrs. Ramzy further testified that Dr. Ramzy told her none of these coins were in his possession; that she saw none of the coins; and further that Dr. Ramzy opened up a safe and there were no coins therein.

■ We hold that the testimony above related as to all items except item 4 and item 5, insofar as it pertains to gold coins, is conclusive, and that the Relator cannot comply with the four directives mentioned. The testimony "falls within the exception giving conclusive effect to such testimony where it is clear and positive and there are no circumstances in evidence tending to discredit or impeach it." Ex parte Rohleder, supra; Ex parte Gonzales, supra; McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722 (1943).

We come now to consider that part of the contempt judgment which directs the Relator to deliver to the Clerk "all portions of said coin collection delivered by the defendant to defendant's children by a former marriage." The coins referred to in this part of the contempt judgment were gold coins. Both the Relator and Mrs. Ramzy testified in regard to these coins at the September hearing. Relator testified that he had about $400.00 in gold coins, while Mrs. Ramzy testified that the Relator owned "between $500.00 and $1,000.00 in gold and silver coins prior to their marriage." The Relator testified further that "[t]he only gold coins I had was some I had prior to the marriage and I gave them to the children some considerable time prior to the time the divorce action was filed." This testimony indicates that he gave all of the gold coins [$400.00] to his children. However, later in his testimony he said that he gave only $100.00 in gold coins to his children. He further testified that he had $300.00 in gold coins in his possession after the injunction was issued and served restraining him from disposing of the coin collection. Relator testified that these particular coins were removed from a filing cabinet in his office by someone who had a key to the office. Relator's testimony indicates that he believed Mrs. Ramzy was the person who entered the office and took the gold coins. He said that he did not list these gold coins in the inventory because he did not then have them in his possession, and that "Rhoda [Mrs. Ramzy] had it." Mrs. Ramzy denied getting the gold coins. During the October hearing, the Relator testified that he gave the gold coins to his children in August, 1965, but he did not state at this hearing the value of the coins as he did during the former hearing. He said that it was impossible to secure a return of the gold coins which were given to the children, and, therefore, it was impossible to deliver the coins to

the District Clerk. He testified that the mother of the children told him that she had sold the coins and that she could not remember the name of the man she sold them to.

The evidence above related in regard to the gold coins does not conclusively show that the Relator is unable to respond to the court's order to deliver the gold coins to the Clerk. The burden rested upon the Relator, not to conclusively show the exact number of gold coins, but to conclusively show that whatever number of gold coins that were in his possession and control after the injunction was granted could not be delivered to the Clerk in accordance with the court's order. The trial judge at the September hearing could have concluded that the Relator actually had in his possession $700.00 in gold coins and that he gave to his children $400.00 in gold coins, leaving the $300.00 in gold coins in his possession. On the other hand, the court could have concluded that he only had in his possession $400.00 in gold coins and that he gave to his children $100.00 in gold coins. The record as to these gold coins does not meet the test recently announced in *Ex parte Rohleder,* supra. The testimony must be clear and positive, and there must be no circumstances in evidence tending to discredit or impeach the testimony—upon which Relator relies. We hold that the court did not exceed its power in ordering that Relator be imprisoned until he delivers to the Clerk of Jack County, Texas, "all portions of said coin collection delivered by the defendant to defendant's children by a former marriage." See Ex parte Preston, 162 Tex. 379, 347 S.W.2d 938 (1961).

We hold that the judgment of contempt is not void insofar as item 4 and that part of item 5 which pertains to gold coins are concerned. The Relator, Dr. Carl O. Ramzy, Jr., is remanded to the custody of the Sheriff of Jack County, Texas, until he purges himself of contempt by delivering to the Clerk the gold coins referred to in the contempt judgment, or until it is shown that it is not within his power to comply with the judgment of contempt.

In the event another habeas corpus proceeding is instituted by the Relator, the issues presented for adjudication should be disposed of by the entry of final judgment by the trial court, either remanding the Relator to custody of the Sheriff of Jack County, Texas, or discharging him from such custody.

## Concurring Opinion

NORVELL, Justice.

I concur in the order of the court remanding the relator to the custody of the Sheriff of Jack County. I have grave doubts as to the advisability of our considering the evidence adduced at the hearing held on October 10, 1967. However, even if such evidence be considered, the relator must be remanded to the custody of the sheriff as ordered by the court. It seems that the district judge misapprehended the nature of the proceeding instituted by the filing of Dr. Ramzy's petition for writ of habeas corpus. By virtue of this action, the jurisdiction of the District Court of Jack County, 43rd Judicial District, was invoked to decide whether or not Dr. Ramzy was being lawfully restrained of his liberty. At that time Dr. Ramzy was in the custody of the sheriff and the district court could have and should have decided the issue presented by Dr. Ramzy's petition, rather than merely certifying to this court the transcript of the testimony adduced in what amounted to an ex parte proceeding. Mrs. Ramzy was not notified of the hearing and no witness was subjected to cross-examination.

In my opinion, a district court is a more suitable forum than this court to decide issues arising in cases similar to the present one. By cases similar to this one, I mean those in which it appears beyond peradventure that a restraining order or injunction issued in a civil case has been violated and as a result a contempt order

has been rendered containing both punitive and coercive sanctions. In this case, Dr. Ramzy violated an injunction and thus rendered himself liable for three days confinement in jail and a fine of $100.00. Article 1911, Vernon's Ann.Tex.Stats. In addition to the punitive provision, the order contains a coercive clause which provided that Dr. Ramzy "shall be confined in the County Jail of Jack County, Texas, * * * until he shall have purged himself of all contempt of this Court by delivering to the possession of the District Clerk of Jack County, Texas, for safekeeping pending final trial of this suit for divorce, all portions of the coin collection delivered by defendant to Gean Cashdan, all portions of said coin collection delivered by the defendant to M. A. Withers, all portions of said coin collection delivered by the defendant to the Jacksboro National Bank of Jacksboro, Texas, and all portions of said coin collection delivered by the defendant to defendant's children by a former marriage, and all portions of said coin collection remaining in the defendant's possession or under defendant's control, whether of value or not, and wheresoever located." [1]

Dr. Ramzy contends that it does not lie within his power or ability to comply with the coercive portion of the decree. Whether a person can or cannot perform as ordered by a court becomes a question of law in those instances only when from an examination of the evidence, reasonable minds cannot differ as to the conclusion, either that he can or cannot perform as ordered.

The habeas corpus power of this court does not extend to the determination of fact issues. Ex parte Reid, Ex parte Lytle, 99 Tex. 405, 89 S.W. 956 (1905); Ex parte Olson, 111 Tex. 601, 243 S.W. 773 (1922). It is only when the proof adduced at the hearing establishes the controlling issue—in this case, relator's inability to comply with the court's order, as a matter of law, that this court can regard the order of commitment as being invalid for the reason that a court may not deprive a person of his liberty for failure to comply with a coercive order when performance is impossible. Ex parte Helms, 152 Tex. 480, 259 S.W.2d 184 (1953); Ex parte White, 154 Tex. 126, 274 S.W.2d 542 (1955); Ex parte Townsley, 156 Tex. 402, 297 S.W.2d 111 (1956), Ex parte Rohleder, 424 S.W.2d 891 (Tex.Sup.1967). A district court, however, is vested with plenary power to modify or vacate its mandatory orders requiring a person to perform certain acts so as to do justice in the particular case.

A situation may, and often does, arise in which a party may be able to comply with a court order when made, but because of a subsequent change in conditions, he cannot carry out the court's directive. An example is afforded by the cases involving support orders wherein one's earning capacity, through accident, sickness or other cause, is diminished or destroyed. In such a case, he may make application for relief to the district court. Ex parte Gonzales, 414 S.W.2d 656 (Tex.Sup.1967). In *Gonzales,* the relator after he had been found guilty of contempt and served three days in jail, thus satisfying the punitive portion of the district judge's order, made application to the district court for release because of his inability to pay back support money. The trial judge refused to release him and after obtaining a statement of the evidence adduced upon the hearing of the motion, this court in an original habeas corpus proceeding held the restraint to be illegal because the evidence showed as a matter of law that relator could not comply with the order.

1. The most common case of this character is one involving child support payments where the father (or person ordered to make such payments) fails to do so and thereafter is held in contempt and both punitive and coercive provisions are contained in the contempt decree and he contends that he is financially unable to comply with the coercive portion of the decree.

In my opinion, the procedure outlined in *Gonzales* is applicable here and would afford relator a more efficacious remedy than is available to him by an original proceeding in the Supreme Court; this, because of the broader authority vested in the district court relating to the control of its orders. Should the district court decide against relator, he would then have a record to bring to this court to support a contention that it appears conclusively as a matter of law that he is unable to comply with the coercive order of the district court.

There is one other matter that may be mentioned. While Albert ex rel. Buice v. Patterson, 155 F.2d 429 (1st Cir. 1946) was an appealed case, the opinion contains statements with reference to the difference in positions of the trial and the appellate courts which seem valid here. The trial judge has an opportunity to view the witness and judge his credibility and this may be decisive. The Court of Appeals said:

"No doubt there may be cases in which it would be clearly erroneous not to believe uncontradicted testimony. But so many factors affect credibility that it is hard to conceive of a situation in which we could say that it was clearly erroneous for a trial court to disbelieve, or find insufficient, oral testimony, even if uncontradicted, given with respect to a basic issue by a party having the burden of persuasion."

Likewise, great care should be exercised in giving effect to testimony which has been adduced when no opportunity to cross-examine or contradict has been afforded. Generally, upon the filing of a habeas corpus proceeding, the district judge notifies the party interested in the enforcement of the order theretofore entered by the district court, if such notice can be given without delay. Then, evidence is adduced under adversary conditions and hence is more reliable than that contained in mere ex parte statements. Cross-examination is not a weapon in the arsenal of forensic art which we may safely disregard.