**John M. GARROUTTE, Plaintiff in Error,**

**v.**

**Ethel L. Rich GARROUTTE,
Defendant in Error.**

**No. 41900.**

Supreme Court of Oklahoma.

June 3, 1969.

Fred A. Tillman, Bill Heskett, Jack Heskett, Pawhuska and Bartlesville, for plaintiff in error.

Geb & Wideman, Leonard G. Geb, Joseph A. Wideman, Ponca City, for defendant in error.

BERRY, Vice Chief Justice.

This is an appeal from judgment and jail sentence imposed upon plaintiff in error for indirect civil contempt. The sole question is whether failure to comply with a trial court's order for delivery of personal property constitutes a civil contempt, when contemnor's failure to comply does not result from fault upon his own part?

Ethel Garroutte sued plaintiff in error for divorce, alimony and equitable property division. On May 25, 1965, the trial court granted divorce, set over to each the separate property brought into the marital community, and decreed equitable division of jointly acquired property. Among personal property awarded plaintiff were certain named registered horses, which defendant

was ordered to return to plaintiff, along with registration papers.

July 25, 1965, during pendency of motion for new trial, plaintiff applied for order requiring payment of temporary support payments previously ordered, vacation of a described tract of land awarded plaintiff, and to require defendant to surrender the horses owned by plaintiff. The trial court granted the order as prayed. On September 28th plaintiff applied for citation for indirect civil contempt by reason of defendant's failure to comply with terms of the divorce decree, particularly including disobedience of order requiring delivery to plaintiff of registration papers on named horses. Citation issued commanding defendant to appear October 1, 1965, and show cause why he should not be punished for contempt by reason of failure to obey the court's order.

October 15, 1965, the citation for indirect contempt was heard and matters supporting the application found to be true. Defendant was found guilty of willful indirect contempt and sentenced to 90 days in jail, sentence to be suspended if defendant purged himself within 10 days by fulfilling terms of original order, otherwise sentence was to be carried out.

Defendant responded to citation by showing compliance with requirements as to release of outstanding judgment and vacation of real property. Response further showed registration papers upon certain horses had not been delivered to plaintiff for the reason for a long period such papers had been, and at the time remained, in possession of a third party in another state so these horses could be raced, all of which was with plaintiff's consent.

At the October 25th hearing the evidence showed defendant had been unable to obtain papers on two horses. These papers were held by defendant's adult son who had not responded to defendant's efforts to communicate. It appeared this son held the papers under claim of a lien for training and feeding. The court, expressing unwillingness to punish defendant, de-

ferred time for imposition of sentence, directed defendant to continue efforts to communicate with his son and seek his agreement to return the registration papers, and thereby relieve defendant of the predicament. The court stated he could not imagine a son who would not cooperate to aid his father, but recognized impossibility of defendant making the son act. Imposition of sentence was deferred until November 5th, at which time the court also was to hear pending motion for new trial in the divorce action.

Upon further hearing November 5, 1965, the court was advised both defendant and his attorney had attempted to communicate with the son. The attorney had learned an attorney in Hastings, Nebraska, had advised against surrendering the registration papers. Communication with the Nebraska attorney disclosed the son was asserting a possessory lien upon the papers because of a claimed training bill due from plaintiff. The court recognized defendant's difficulty and good faith efforts and again deferred action, since there having been no direct communication with the son, to afford the son opportunity to come to defendant's aid.

Further hearing on December 10, 1965, disclosed defendant had communicated with his son by letter, and long distance telephone. Not only had the son verbally disclaimed intention to return the ownership papers, but defendant had received a letter which showed the son's refusal to mail "those horse papers because of the training bill Ethel owes me." The court again recognized defendant's good faith attempts to comply with directions and instructions in attempting to secure return of the papers. However, the trial court then overruled motion for new trial and sentenced defendant to 60 days in jail. Upon oral announcement of intent to appeal the trial court fixed bond and the cause was brought to this Court.

■ By statute, 21 O.S.1961, § 565, contempts of court are divided into two classes. Willful disobedience of an order made by a court in this state not commit-

ted in presence of the court is an indirect contempt. Browning v. Ray, Okl., 440 P.2d 721; Seifried v. State ex rel. Bash, 184 Okl. 299, 86 P.2d 1008. The mentioned terms of the trial court's order were not complied with by defendant. This poses the issue whether, upon showing of defendant's failure to discharge the obligation imposed by the court's order, defendant was guilty of such conduct as constituted willful disobedience for which punishment should be ordered for the purpose of enforcement?

■ Failure to obey a valid order of court does not in every instance support a charge of contumacious conduct. A recognized exception arises when failure to obey results from inability of the party to whom the order is directed to comply without fault upon his part. This rule is stated in 17 C.J.S. Contempt § 19:

"It is essential to constitute a contempt that the thing ordered to be done be within the power of the person against whom the order is directed. Accordingly, there is no contempt in refusing to obey an order where the party charged, without fault on his part, is unable to comply therewith, as, for instance, where he is unable to comply with an order to surrender property or a person over which he no longer has possession or control."

This rule is widely recognized and applied. 17 Am.Jur.2d, Contempt § 51, and annotations in 120 A.L.R. 704, 12 A.L.R.2d 1051. Where contemnor is not at fault see Davison v. Davison, 125 Kan. 807, 266 P. 650. Concerning good faith effort to comply see 30 A.L.R. 159.

United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884, 890, states the rule:

"Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply. A court will not imprison a witness for failure to produce documents which he does not have, unless he is responsible for their unavailability, cf. Jurney v. MacCracken (294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802) supra, or is impeding justice by not explaining what happened to them, United States v. Goldstein, 2 Cir. (N.Y.), 1939, 105 F.2d 150."

To the same effect see United States v. Fleischman, 339 U.S., 349, 70 S.Ct. 739, 94 L.Ed. 906.

In White v. Hutton, (Mo.App.) 240 S.W.2d 193, commitment had been ordered for contemnor's failure to comply with the court's order directing delivery of money to administratrix of an estate, despite the showing there was no money under possession or control of the contemnor. In holding commitment invalid that court stated:

"Contempt for failure to obey a judgment to deliver property must necessarily presuppose the possibility of compliance, and its essence is the willful, contemptuous and contumacious refusal to do so."

Although arising from contempt resting upon violation of terms of a divorce decree, this exception was recognized in principle in Johnson v. Johnson, Okl., 319 P.2d 1107. The defendant was found guilty of indirect contempt, resulting from failure to pay temporary alimony, child support and attorney's fee, and was ordered committed and to be confined until the total amount had been paid. Affirming the judgment for contempt, this Court recognized confinement in such cases should be coercive in nature. In the case we quoted from Ex parte Hamburg, 37 Idaho 550, 217 P. 264, to the effect that to justify imprisonment until a person has performed an act requires a showing performance of that act is within the power of the person to perform. And, we stated serving a fixed, reasonable sentence was proper, so long as there was possibility defendant might not serve at all. However, being required to serve a sentence despite good faith efforts to comply with the trial court's order seemed oppressive and unreasonable.

■ There was no evidence defendant had willfully refused to comply with the court's order. The evidence showed, and

the trial court recognized defendant, from no fault of his own, neither had the property under his control, nor the present ability to comply with the order. To the contrary, the court acknowledged defendant's continuing efforts by telegram, letter and telephone, to persuade the son to return the papers. This recognition of the situation was the basis for several continuances, according defendant additional time to attempt compliance. The transcript reflects that at all times following the citation the essential element of possession was missing, the papers in question being beyond defendant's control and authority. Defendant's continued efforts to resolve the matter failed to show any lack of respect for the court's order. So far as this proceeding is concerned the judgment, finding defendant guilty of indirect contempt and commitment based thereon, was erroneous for apparent inability of defendant to comply therewith through no fault of his own.

Judgment reversed.

All Justices concur.