In re Terry E. ANDERSON, Relator.

No. 1429.

Court of Civil Appeals of Texas, Tyler.

July 10, 1980.

Wm. M. House, Jr., Alfred Summers, Summers, Summers & House, Palestine, for appellant.

James N. Parsons, III, Parsons, Thorn & Wells, Palestine, for appellee.

MOORE, Justice.

This is an original habeas corpus proceeding. By a judgment entered by the 173rd Judicial District Court of Anderson County, relator, Terry Anderson, was adjudged in contempt of court for failure to make payments for the support of his minor children as required by a divorce judgment entered by the court on April 6, 1977, as well as by a subsequent order concerning payment dated October 10, 1978. The contempt decree ordered the relator to jail for a period of three days and further ordered that relator should be further confined in jail, after the expiration of the three–day period, until he purged himself of contempt by paying $3,805.00 delinquent child support plus court costs amounting to $33.00.

Relator asserts that the record made at the hearing below conclusively establishes his inability to perform the order of the court requiring him to pay the sum of $3,805.00 and court costs and confining him in jail until such sum is paid in full, and that the judgment in such coercive respect is void. After a review of the record we are constrained to agree and therefore order relator discharged.

Under the 1977 divorce decree and subsequent orders of the court, relator became obligated to pay child support payments in the amount of $150.00 per month. It appears from the record that as of June 5, 1980, only about one third of such monthly payments had been made. It also appears from the record that relator was financially able to make some of the monthly payments at the time the same accrued but failed or refused to do so. Article 1911a of the Texas Revised Civil Statutes authorizes punishment for contempt by fine of not more than $500.00 and by confinement in county jail for not more than six months for failure to obey the orders of the court. The trial court did not elect to impose punishment under the last–mentioned statute, so we are not here concerned with the power of the trial court to impose punishment. Rather, the question before us is whether, under the facts, the trial court was authorized to enter a coercive contempt decree, confining relator indefinitely, until the total amount of the delinquent child support payments were paid.

An original habeas corpus proceeding in this court is a collateral attack upon the contempt order, and the relator may be relieved of that order's imposition only if the order is void. *Ex parte Thetford*, 369 S.W.2d 924, 925 (Tex.1963); *Ex parte Helms*, 152 Tex. 480, 259 S.W.2d 184, 186 (1953). It has been repeatedly held by the supreme court of this state that an order of contempt imposing a coercive restraint is void if the condition for purging the contempt is impossible of performance. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex.1976); *Ex parte Smyers*, 529 S.W.2d 769, 770 (Tex.1975); *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967). Unless the relator has the means by which he may purge himself of contempt, he must be discharged from jail. Otherwise, the effect of denying the writ of habeas corpus would mean that the relator would be confined for the balance of his natural life. *Ex parte De Wees*, 146 Tex. 564, 210 S.W.2d 145, 147 (1948).

It is now settled law that the contempt order is void if the evidence offered at the hearing or hearings conclusively es-

tablishes that at the time of the contempt hearing it was not within the power of the relator to perform the act or acts which would release him from the coercive nature of the court's judgment. *Ex parte Ramzy,* 424 S.W.2d 220, 223 (Tex.1968), citing cases.

The evidence bearing upon relator's ability to pay was heard by the court below on February 5, 1980. At that time relator elected not to testify. At the conclusion of the hearing the court announced that relator was in contempt, but that no order of commitment would be issued for a period of thirty days in order to give relator an opportunity to comply with the order. On June 5, 1980, another hearing was conducted at which relator was permitted to testify with reference to his ability to pay.

The evidence bearing upon relator's ability to pay the arrearage is not controverted. After the divorce relator remarried in August 1978. At that time he was a railroad employee. Thereafter, he worked as a brick mason for his father, earning $7.00 per hour, and was also engaged in the business of a brick contractor. He testified that although he desired to support his children, he had no way of paying the $3,805.00 in delinquent child support payments. He further testified that he had no funds or property that he could sell or pledge to obtain the $3,805.00. The evidence shows that the only property owned by him consisted of a 1979 Chevrolet pickup truck, which had been wrecked, and some equity in the home which he had been awarded in the previous divorce decree. According to the testimony of his present wife, relator acquired the pickup truck in January 1979 for $100.00 and the assumption of a lien against the truck payable in monthly installments of $147.00 per month. Relator testified that in his opinion the lien against the truck would be equal to its value especially since it had been wrecked. With regard to the home, the record shows that between the time of the hearing on February 22, 1980, and the June 5 hearing, relator's present wife had entered suit for a divorce, claiming an interest in the home. The trial court in that case had temporarily awarded her possession of the home pending outcome of the divorce action. The record further shows that the home was involved in other litigation in which the vendor was seeking to set aside the deed. Relator's present wife testified at the February hearing that although they had earned approximately $1,300.00 from their brick contracting business since January 1, they only had $11.00 in the bank at that time. Relator testified that he owed his father several thousand dollars and had attempted to borrow more money from him but was unable to do so. He testified that he went to the bank where he does business and was unable to obtain a loan. In summary, he testified that there was simply no way that he could raise the money to pay the delinquent payments. No testimony whatever was offered at either hearing suggesting that he had funds or property which could have been sold or pledged to raise the sum of $3,805.00.

The duration of relator's incarceration amounts to some corroboration of his uncontradicted testimony. *Ex parte Fielder,* 446 S.W.2d 698, 701 (Tex.Civ.App.–San Antonio 1969, no writ). He was committed to jail on June 5, 1980, where he remained until June 16, 1980, when he was released on bond pursuant to this court's order.

As heretofore stated, the record supports the conclusion that relator was able to pay some, if not all, of the weekly payments in the past as they accrued. There is no justification of course, for his action in failing to make some or all of such payments for the necessary support of his children at the time they accrued. However, the question before the trial court, as well as this court, is not whether he could have made payments at the time they accrued, but is whether relator was financially able to pay the $3,805.00 and court costs at the time of the contempt hearing on June 5, 1980. The uncontradicted record before us is that he was not able to purge himself by paying such sum at that time, in that he had no funds and no means of obtaining such an amount. Consequently, we are left with no alternative other than to hold that the trial

court exceeded its power in ordering that relator be imprisoned until said sum of $3,805.00 and court costs are paid. *Ex parte Gonzales*, 414 S.W.2d 656 (Tex.1967); *Ex parte Rohleder*, supra.

The relator is therefore discharged.