**Ex parte William Rex WOODRUFF.**

No. 8125.

Court of Civil Appeals of Texas, Texarkana.

July 25, 1972.

Rehearing Denied Aug. 15, 1972.

Merritt Gibson, Longview, for relator.

Ralph Prince, Dist. Atty., Longview, for respondent.

John Smith, Smead, Roberts, Harbour, Smith, Harris & French, Longview, for intervenor.

PER CURIAM.

Pending a hearing on the merits of William Rex Woodruff's application for Writ of Habeas Corpus, an original proceeding in this Court,[1] one of the Court's judges ordered Woodruff released from the custody of the Sheriff of Gregg County, Texas, upon posting bail bond. The Woodruff application, exclusive of the instrument annexed to it, is as follows:

"THE STATE OF TEXAS

COUNTY OF GREGG

TO THE HONORABLE COURT OF CIVIL APPEALS FOR THE SIXTH SUPREME JUDICIAL DISTRICT OF TEXAS:

Now respectfully comes WILLIAM REX WOODRUFF, and making this petition for a writ of habeas corpus shows the Court:

That petitioner is illegally confined and is illegally restrained in his liberty in the county jail in Longview, Gregg County, Texas, by Noble Crawford, the Sheriff of said county; that such illegal restraint and confinement is by virtue of a certain Order of Commitment, a copy of which is annexed to this petition and made a part hereof.

Wherefore petitioner prays that this court grant and issue a writ of habeas corpus forthwith and that petitioner be released on bail pending a hearing on the merits of this petition, and that petitioner be discharged.

William Rex Woodruff
William Rex Woodruff,
Petitioner

THE STATE OF TEXAS

COUNTY OF GREGG

BEFORE ME, the undersigned authority on this day personally appeared William Rex Woodruff, who being by me duly sworn, upon oath says that he is the petitioner in the above and foregoing petition, that he has read said petition and that the allegations of the same are true according to the belief of the petitioner.

William Rex Woodruff

SUBSCRIBED AND SWORN TO before me by the said William Rex Woodruff this the 5th day of June, 1972.

Margie Crnkovic
Notary Public in and for
Gregg County, Texas"

The annexed instrument is a photographic reproduction of a document that purports to be a certified copy of an order signed by the Judge of the Domestic Relations Court, Gregg County, Texas. The instrument is copied in a subsequent paragraph.

1. Vernon's Tex.Rev.Civ.Stat.Ann. 1824a (1970) authorizes such action. For discussion of the jurisdiction of Courts of Civil Appeals to entertain original habeas corpus actions and limitation thereof see: Chadick, Original Habeas Proceedings in Courts of Civil Appeals, 33 Tex.B.J. 183 (March 22, 1970).

The sufficiency of the Woodruff application [2] and supporting data is doubtful. It is observable that the application speaks in conclusory terms and merely sets out a conclusion that Woodruff is illegally restrained. The instrument annexed to the application does not on its face show illegality of Woodruff's restraint or confinement. But neither these nor other possibly defective constituents of a sufficient application will be pursued as jurisdiction has been assumed and a full scale hearing concluded. Little would be gained by dismissing the application because of form at this juncture as it is probable that a new or amended application would be promptly filed.

█ The trial court motion to hold Woodruff in contempt alleged that Woodruff "failed and refused" to pay child support arrearage. The instrument labeled "Order of Commitment," which is copied hereafter, recited that Woodruff "willfully" disobeyed the support order when he was "well able to have obeyed." Woodruff cites Ex parte Scott, 133 Tex. 1, 123 S.W.2d 306, 126 S.W.2d 626 (1939), for the proposition that contempt proceedings are criminal in nature and that willfulness is an essential element of contempt. From this base it is reasoned that an allegation of willfulness is a prerequisite to jurisdiction of the trial court. The motion is in substantial compliance with Tex.R.Civ.P.Ann. 308–A. Though contempt proceedings are frequently said to be criminal in nature, the mentioned rule governs pleading and practice in cases where the contemptuous conduct is alleged to be disobedience of a child support order. The rule requires a verified written statement describing the claimed disobedience and expressly dispenses with other written pleadings. Simplicity in pleading and practice is so characteristic of the rule that a construction requiring a written complaint to use particular or artful words or allegations would run counter to the rule's spirit and purpose. Reading into the rule a requirement that the complaint contain allegations of ability to

2. The Supreme Court's procedure and practice in habeas corpus proceedings sets the pattern that should be followed in cases of the nature of this under consideration. Greenhill and Beirne, Habeas Corpus Proceedings in the Supreme Court of Texas, 1 St. Mary's Law Journal, 1 (spring 1969), is a useful guide for bench and bar. With respect to the mechanics of filing an application and the nature of the support that must accompany it, the following extract from the law journal furnishes a check list, to-wit: "The most important items which should be brought to the Court are: 1. A motion for leave to file the application. 2. The application for writ of habeas corpus, setting out the facts and clearly giving the reason or reasons why the Relator is being illegally restrained and should be released. 3. A brief in support of the application, setting out any relevant constitutional or statutory provisions and the cases which support the alleged grounds of illegal restraint. 4. A filing fee of ten dollars. An additional fifteen dollar fee will be required if motion for leave is granted. See Tex.R.Civ. P. 485. It is suggested that these matters be checked with the clerk of the Court before coming to Austin. If a pauper's oath is to be used, the proper procedure might also be checked with the clerk. 5. Proof that the Relator is illegally restrained. 6. A transcript of relevant orders, judgments and commitment. 7. A transcribed statement of facts or agreed statement of facts in cases in which one will be required. 8. Provision for an adequate bond in the event the writ is granted. * * * * there must be proof that the Relator is actually in jail. A letter, certificate or wire from the sheriff stating this is generally acceptable. * * * * The transcript must include a verified or authenticated copy of the order of the court out of which the alleged contempt grew; i. e., the order which has been violated. The transcript must also include the judgment or order of contempt. * * * * In such a case, or in a similar case, a complete transcript of all relevant hearings, orders and judgments should be brought to the Supreme Court so that the matters may be reviewed fully and without the delay which may be required to send for and bring previous orders and judgments. * * * * A statement of facts is also required where the granting of the writ of habeas corpus turns upon factual evidence, such as the inability to perform an order. * * * * "

pay and willful disobedience would violate the rule's express policy that no written pleadings be required except a statement describing the claimed disobedience.

■ The point is additionally made and argued that the trial court judgment did not conform to the allegations in the pleadings and that as a result the judgment is void as a violation of Tex.R.Civ.P.Ann. 301. Woodruff's argument assumes that the Texas Rules of Civil Procedure governs this procedural aspect of the action in the trial court. Consistent with such assumption, other pertinent rules on the same subject would necessarily have effect also. Failure to object to the pleadings constitutes a waiver of defects therein under Tex.R.Civ.P.Ann. 90 and trial of issues outside the pleadings is authorized by Tex. R.Civ.P.Ann. 67. In the absence of a record showing the contrary, the implication of the judgment is that any defect in pleadings was waived and that the issues of willfulness and ability to pay were tried outside the written pleadings. Woodruff's first and second points of error are overruled.

■ Briefed as Woodruff's third point of error is the contention that Woodruff was "illegally confined and is illegally restrained because no writ or other written instrument was issued and directed to the Sheriff of Gregg County ordering or directing him to confine Woodruff in jail." The previously mentioned instrument attached to the Woodruff application in this Court and labeled Order of Commitments is in this language, to-wit:

"NO. 416–F1DR

IN THE COURT OF DOMESTIC RELATIONS IN AND FOR GREGG COUNTY, TEXAS

ORDER OF COMMITMENT

BE IT REMEMBERED that on this the 2nd day of June, 1972 came on to be considered the statement and affidavit of Laverne Woodruff to adjudge William Rex Woodruff to be in contempt of Court for failure to observe and obey the Order, Judgment, and Decree in the above styled and numbered cause recorded in Minute Book Volume 99, pages 101–108 of the minutes of this Court, and Respondent having full notice of said hearing, the notice to show cause having been served on May 10, 1972;

AND William Rex Woodruff came (By Counsel);

AND, the Court having heard the evidence and read the pleadings herein is of the opinion that the said William Rex Woodruff has;

1. Willfully disobeyed and failed to observe the above cited Order, Judgment, and Decree of this Court, which Order he was well able to have obeyed prior to the hearing herein, and that he should be adjudged, and he is hereby adjudged to be in contempt of this Court for such willful failure and disobedience and;

A. It is therefore Ordered, Adjudged and Decreed that William Rex Woodruff be, and he is hereby adjudged to be in contempt of this Court for such failure and disobedience, and the punishment therefor is fixed and assessed at confinement by the Sheriff of Gregg County, Texas, in the County Jail at Longview, Gregg County, Texas for a period of 72 hours; and he is ordered further confined in jail until he has fully purged himself of such contempt by the payment of all child support arrearages under the above cited order into the Registry of this Court, the balance of said arrearages at the date of this order being in the amount of $340.00 and by the payment in full to the clerk of this Court of all costs to date.

Wm. C. Martin, III
Judge, Court of Domestic Relations In and For Gregg County, Texas

I certify that the above and foregoing is a true copy of the order of this Court

entered by this Court and filed with this Court at 5:55 p. m. on the 2nd day of June, 1972.

Wm. C. Martin, III
_____
Wm. C. Martin, III
Judge, Domestic Relations Court
In and For Gregg County, Texas

A printed form was used in preparing the order in which blanks were filled in and portions marked out. Only the operative portion is copied. Examination of the instrument confirms that it is of a dual nature. It clearly embodies a judgment of the Court. It also fixes punishment and orders confinement in jail. In Ex parte Arapis, 157 Tex. 627, 306 S.W.2d 884 (1957), it is said: "A 'commitment' is a warrant, order or process by which a court or magistrate directs a ministerial officer to take a person to jail or to prison and to detain him there. 7A Words and Phrases, Commitment, p. 577, et seq. It is the written authority under which the officer acts. 'There is no particular form prescribed by law for a commitment.' Ex parte Palmateer, 150 Tex. 510, 243 S.W.2d 160, 161. It may consist of an authenticated copy of the court's judgment which itself directs that a person be placed in jail and be there detained, Ex parte Coward, 110 Tex. 587, 222 S.W. 531, or it may take the form of a separate written order, signed by the judge or magistrate, or of a written order issued and signed by the clerk of the court by direction of the court." In Ex parte Coward, cited in this quotation, a written judgment imposing a fine and imprisonment in jail was entered in the trial court and a certified copy thereof was delivered to the Sheriff as a commitment. Chief Justice Phillips' opinion declared the commitment procedure valid. Woodruff's application for writ of habeas corpus, heretofore quoted, alleges that the Sheriff of Gregg County restrained and confined him pursuant to the order of commitment set out above. This allegation puts this case within the prescript of Ex parte Coward.

■ There is an additional reason why confinement by authority of the order mentioned is valid. Only the coercive provisions of the order is of concern in this proceeding, the punishment pronounced having been satisfied before application was made for habeas corpus relief. The commitment order, considered as a judgment, assesses punishment at confinement by the Sheriff in the county jail and further states that Woodruff, "is ordered further confined until he has fully purged himself," etc. This language is a direct order that Woodruff be confined in the county jail. The order coupled with Woodruff's voluntary action shown by the extract from the statement of facts, next quoted, rendered additional commitment orders superfluous. At the end of the hearing this colloquy took place, to-wit:

"THE COURT: Mr. Woodruff, I am finding you in contempt, but since you have a job, I am willing for you to serve the 72 hours of confinement or any other confinement, on Saturdays alone, if you desire to do so.

MR. WOODRUFF: Your Honor, if it is permissible with the Judge, I would like to go to jail right now.

THE COURT: That will be permissible. Mr. Bailiff, please take Mr. Woodruff to jail and have them note that he shall start receiving credit for his jail time at 6:00 p. m."

Thus the record shows that Woodruff voluntarily surrendered himself to the Court and accepted restraint and confinement pursuant to the terms of the judgment. To request immediate confinement pursuant to judgment of the Court and after the request is granted complain that a specific written order of commitment was not issued constitutes an impermissible trifling with the process of the Court. The third point of error is overruled.

■ Under the fourth point of error briefed by Woodruff it is urged that the

trial court judgment is void because at the time of hearing Woodruff did not have sufficient funds, "and had not any source from which he might reasonably expect to obtain the amount necessary to purge himself from the alleged contempt." Woodruff testified that he did not own any real estate or interest therein; and did not own any personal property under his control except clothes, personal effects, and fishing gear, the latter of the approximate value of $50.00. He said he was unable to withdraw sufficient funds from his thrift account with his employer to pay arrearage in child support. The only indebtedness mentioned had been extinguished. His only income was a monthly salary of $1,198.00, amounting to an annual salary of $14,376.00. He itemized his income and expense for the months of March and April 1972. The itemization listed income as "take home pay." March take home pay was $691.98 and April take home pay was $701.38. No effort was made to account for the remainder of admitted monthly salary. The excess of gross salary over take home pay is not shown to be unavailable to Woodruff. Woodruff acknowledges a monthly cash flow of approximately $700.00 per month. An analysis of the expense reported indicates that it all falls within the general category of living expenses, such as rent, taxes, car repairs, telephone, newspaper, church donations, laundry, college expense, clothing, etc. Unquestionably, the greater part of the expense was reasonable and necessary, but payment of each item of the expense was at Woodruff's discretion; no payment was involuntary. In other words he chose to pay these items of expense rather than pay child support that the court had ordered. The record does not establish conclusively, that is, as a matter of law that Woodruff was unable, due to no fault of his own, to pay the arrearage in child support. Ex parte Heard, 372 S.W.2d 942 (Tex.Sup.Ct.1963). Ex parte Ramzy, 424 S.W.2d 220 (Tex.Sup.Ct.1968).

Woodruff's application for Writ of Habeas Corpus is refused.